976 So.2d 358 (2008)
Richard H. POWELL, Appellant
v.
Amy Sue POWELL, Appellee.
No. 2006-CA-01892-COA.
Court of Appeals of Mississippi.
March 4, 2008.
*359 Marcie Tanner Southerland, Vicksburg, Jennifer Powell Fortner, attorneys for appellant.
James L. Farrior, attorney for appellee.
Before KING, C.J., ROBERTS and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. Richard H. Powell appeals from an order of the Chancery Court of Harrison County, which denied his motion for modification of child custody and petition for contempt and granted Amy Sue Powell's motion for an upward modification of child support. Aggrieved, Richard now appeals and raises the following issues:
1. Whether the chancellor erred in finding that there had been no material change in circumstances adverse to the minor children since the original decree.
2. Whether the chancellor erred in failing to apply the Albright factors.
3. Whether the chancellor erred in considering testimony regarding pre-divorce conduct.
4. Whether the chancellor erred in failing to hold Amy in contempt.
5. Whether the chancellor erred in granting an upward modification of child support.
¶ 2. We affirm the denial of Richard's petition for contempt. However, we find that the chancellor failed to consider the totality of the circumstances in denying Richard's petition for modification of custody. *360 Therefore, we reverse the chancellor's judgment and remand this case for a new trial with directions for the chancellor to reconsider the issues of modification of child custody and child support.

FACTS
¶ 3. Richard and Amy were divorced by final decree of the Chancery Court of Harrison County on September 20, 2000. The decree approved and incorporated by reference a separation and property settlement agreement wherein the parties agreed to joint legal custody of the minor children, namely, C.S.P., Rebeccah Morgan Powell, Sarah Lauren Powell, and Andrew Theron Powell, with Amy having physical custody of the children subject to Richard's reasonable visitation rights. Additionally, Richard agreed to pay child support in the amount of $500 per month.
¶ 4. After the divorce, Amy began a relationship with Larry Kennedy. In August 2001, Amy moved herself and the children from Gulfport, Mississippi to Saucier, Mississippi to live with Kennedy. While in Saucier, C.S.P., age twelve at the time, was raped in the woods behind Kennedy's house. Amy did not notify Richard of this event until he returned home from working offshore.[1] While she resided in Saucier, Amy was employed at the Long Beach Yacht Club in Long Beach, Mississippi.
¶ 5. In August 2004, Amy quit her job and relocated herself and the children to Lexington, Mississippi. They moved into a house, and Amy put a down payment on the house. Shortly after taking up residence in Lexington, Amy and her mother, Mary, got into an argument which escalated to the point that Mary pulled a gun on Kennedy. Amy was unemployed while in Lexington. Consequently, she was eventually unable to make payments on her home. Amy's uncle took over payments in November 2004 to enable the children to complete the school year.
¶ 6. In July 2005, Amy attempted to move to Denham Springs, Louisiana. She planned on residing with a friend; however, before Amy left for Denham Springs her living arrangement fell through for reasons not relevant to this appeal. With no place to live, Amy and the children moved in with her grandmother in Springfield, Missouri. While in Springfield, Amy obtained employment with Hampton Inn as a desk clerk. In early August 2005, Amy moved herself and the children into an apartment.
¶ 7. On January 17, 2006, Richard filed a petition for modification of child custody and a petition for contempt. His petition for modification alleged that Amy was unable to provide a stable environment in which to raise their children due to her frequent relocation and sporadic employment. Richard's petition for contempt claimed that Amy failed to exchange information and failed to confer with Richard before making decisions concerning the health, education, and welfare of their children.
¶ 8. On June 11, 2006, Amy decided to relocate herself and the children again. They moved to Houma, Louisiana. Hampton Inn allowed Amy to transfer her employment to a location near Houma. Notwithstanding her employment, Amy was unable to secure a home for herself and the children. Amy and the children moved into a friend's fish camp. On June 27, 2006, Amy filed an answer and a counter-complaint seeking an upward modification of child support. Amy and the children *361 were still living at the fish camp at the time of trial.
¶ 9. Trial took place on July 10, 11, and 12, 2006. At the time, Amy did not know where her children would attend school, which was scheduled to start within the next few weeks. She claimed that she planned on moving out of the fishing camp, but she did not know where or when. At the conclusion of trial, the chancellor denied Richard's motion for modification of custody, finding that there had been no material change in circumstances adverse to the children. Richard's petition for contempt was also denied upon a finding that insufficient evidence was presented to show that Amy's conduct was willful. The chancellor then granted Amy's motion for modification of child support, finding that both the children's needs and Richard's income had increased since the original decree. Richard's support obligations were increased to an amount equal to twenty-four percent of his adjusted gross income.

STANDARD OF REVIEW
¶ 10. A chancellor's findings will not be disturbed on appeal "when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Sanderson v. Sanderson, 824 So.2d 623, 625-26(¶ 8) (Miss.2002) (citation omitted).

DISCUSSION
1. Whether the chancellor erred in finding that there had been no material change in circumstances adverse to the minor children since the original decree.
2. Whether the chancellor erred in failing to apply the Albright factors.
¶ 11. A modification of custody requires the noncustodial parent to prove: (1) that a material change of circumstances has occurred in the custodial home since the most recent custody decree, (2) that the change adversely affects the child, and (3) that modification is in the best interest of the child. Giannaris v. Giannaris, 960 So.2d 462, 467-68(¶ 10) (Miss.2007). Modification must be based on conduct of the custodial parent that poses a danger to the mental or emotional health of the child. Id. at 467(¶ 9) (quoting Morrow v. Morrow, 591 So.2d 829, 833 (Miss.1991)). In determining whether a material change in circumstances has occurred, the chancellor must consider the totality of the circumstances. Creel v. Cornacchione, 831 So.2d 1179, 1183(¶ 15) (Miss.Ct.App.2002) (citing Ash v. Ash, 622 So.2d 1264, 1266 (Miss. 1993)). See also Hill v. Hill, 942 So.2d 207, 210(¶ 8) (Miss.Ct.App.2006) (citation omitted) ("The change in circumstances is one in the overall living conditions in which the child is found.").
¶ 12. In denying Richard's motion for modification of custody, the chancellor stated, "There is really only one main allegation that I find that comes close to stating a substantial and material change in circumstances, and that is the question of the amount of moves Ms. Powell has had." The chancellor ultimately concluded that Amy's frequent relocation did not constitute a material change in circumstances adverse to the children.
¶ 13. We first address Richard's claim that the chancellor erred by failing to apply the Albright factors to determine whether a change of custody was in the best interests of his children.[2] "In a custody modification proceeding, the question of which parent will better serve the welfare of the children as custodial parent is not *362 reached unless the chancellor has previously found a material change in circumstance detrimental to the child's best interest." McCracking v. McCracking, 776 So.2d 691, 694(¶ 10) (Miss.Ct.App.2000) (citing McGehee v. Upchurch, 733 So.2d 364, 369(¶ 21) (Miss.Ct.App.1999)). Because the chancellor found no material change in circumstances, the occasion to consider the Albright factors did not arise. Therefore, this issue is without merit.
¶ 14. Richard next argues that the chancellor erred in determining that no material change of circumstances had occurred since the original decree. Richard asserts that the chancellor's decision ignored evidence that supports a finding that the children's overall living conditions had materially changed to their detriment. We agree.
¶ 15. We find that the chancellor failed to consider the totality of the circumstances to determine whether the children's overall living conditions had changed to their detriment. Consequently, we find that the chancellor applied an incorrect, or rather, an incomplete legal standard. Our review of the record reveals that Richard presented a number of factors, in addition to Amy's frequent relocation, which support his claim that a material change of circumstances had occurred.
¶ 16. Amy correctly asserts that relocation of the custodial parent does not alone constitute a material change in circumstances. Cooley v. Cooley, 574 So.2d 694, 699 (Miss.1991) (overruled on other grounds). However, a material change in circumstances may be established where a custodial parent's relocation is one of several supporting factors. See Jernigan v. Jernigan, 830 So.2d 651, 653-54(¶¶ 2-6) (Miss.Ct.App.2002); Fletcher v. Shaw, 800 So.2d 1212, 1215-17 (¶¶ 10-14) (Miss.Ct. App.2001); Deborah H. Bell, Mississippi Family Law, § 5.11[5][b] (1st ed.2005).
¶ 17. In the instant case the chancellor failed to consider the totality of the circumstances to determine whether a material change of circumstances had occurred. The chancellor's findings did not mention C.S.P.'s rape or Amy's reluctance to provide professional counseling for her.[3] Likewise, the chancellor's findings failed to acknowledge Amy's unstable cohabitation with Kennedy. Beyond all this, the chancellor failed to consider the negative effects of the unstable environment created by Amy's nomadic relocation and sporadic employment. Amy's intermittent employment resulted in an unstable home environment for the children. At the time of trial, the children had been enrolled in three different schools over the past five years, and Amy planned to enroll the children in a fourth school in the upcoming weeks. Andrew was two years behind in school, although his grades had improved just prior to trial. Sarah had a speech impediment and needed continuing speech therapy. Also, the children testified regarding the difficulties they experienced in adjusting to their ever-changing educational and social environments.
¶ 18. Because the record makes clear that several significant factors were not given due consideration by the chancellor at trial in such a factually intense case, we reverse the chancellor's judgment and remand this case for a full consideration by the chancellor.
3. Whether the chancellor erred in considering testimony regarding pre-divorce conduct.
*363 ¶ 19. Under this assignment of error, Richard argues that the chancellor erred in considering testimony regarding the family's pre-divorce relocations. We review a trial judge's decision to admit evidence under an abuse of discretion standard of review. Rushing v. Rushing, 724 So.2d 911, 914(¶ 11) (Miss.1998).
¶ 20. On cross-examination, Richard was asked whether he, Amy, and the children moved eleven or twelve times during their marriage. He responded in the affirmative. Richard made no objection to this question at trial. Accordingly, he has waived the issue on appeal. Robison v. Lanford, 850 So.2d 91, 98(¶ 25) (Miss.Ct. App.2001). However, we will address the merits briefly in the interests of explanation.
¶ 21. Richard claims that principles of res judicata precluded the consideration of the couple's pre-divorce moves. Indeed, prior findings under a divorce decree are res judicata as to any issues that were or might have been litigated at the time of the divorce decree. Childers v. Childers, 717 So.2d 1279, 1280(¶ 6) (Miss.1998). "The familiar rule that a judgment for alimony, custody or support may be modified only upon a showing of a post-judgment material change of circumstances is a recognition of the force of res judicata in divorce actions." Bowe v. Bowe, 557 So.2d 793, 794 (Miss.1990) (citations omitted).
¶ 22. Under the facts of the instant case, we find no error in the chancellor's limited consideration of the family's pre-divorce moves. Our supreme court has explained that "[i]n considering modification of child custody, the chancellor must allow full and complete proof with respect to all circumstances and conditions directly or indirectly related to the care and custody of the children, existing at the time of the original divorce decree and at the time of the modification hearing." Smith v. Todd, 464 So.2d 1155, 1157 (Miss.1985) (emphasis added). To determine whether a change of circumstances has occurred since the original decree, it is often necessary that post-divorce circumstances be measured against pre-divorce circumstances. Thus, it is necessary to understand the conditions existing at the time of the original decree.
¶ 23. In the instant case, the chancellor considered the fact that Richard, Amy, and the children moved frequently before the divorce to determine whether Amy's post-divorce relocations constituted a material change in circumstances. From the chancellor's order, it is apparent that he simply concluded that the children had become accustomed to frequent relocation during Richard and Amy's marriage,[4] and thus the chancellor found no change in circumstances had occurred by Amy's post-divorce relocations. Amy's suitability under the conditions existing at the time of the original decree was not at issue. We find that the chancellor acted within his discretion in considering the pre-divorce relocation of the parties. This issue is without merit.
4. Whether the chancellor erred in failing to hold Amy in contempt.
¶ 24. Richard asserted in his petition for contempt that Amy: (1) failed to confer with him before making decisions regarding the health, education, and welfare of the children; (2) failed to exchange information regarding the health, education, *364 and welfare of the children; and (3) moved to Missouri, making his right to visitation impossible.
¶ 25. After hearing testimony from both parties, the chancellor refused to hold Amy in willful and contumacious contempt of court. Specifically, the chancellor found that the parties do not communicate well with each other, but Amy's conduct did not rise to the level of willful and contumacious contempt of court. "It is a defense to a contempt proceeding that the person was not guilty of willful or deliberate violations of a prior judgment or decree." Mizell v. Mizell, 708 So.2d 55, 64(¶ 52) (Miss.1998) (citation omitted). As the resolution of this issue turns largely on Amy's credibility, we are hesitant to reverse the decision of the chancellor who, "by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than are we." Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss.1990) (citations omitted).
¶ 26. Our review of the record does not reveal evidence which would render the chancellor's decision clearly erroneous or manifestly wrong. Accordingly, we affirm the chancellor's exercise of discretion on the issue of contempt. This issue is without merit.
5. Whether the chancellor erred in granting an upward modification of child support.
¶ 27. Having determined that the chancellor erred in his resolution of Richard's petition for modification of custody, we find it unnecessary to consider this issue on this appeal. We direct the chancellor to reconsider the issue of child support on remand.

CONCLUSION
¶ 28. We affirm the chancellor's refusal to hold Amy in contempt. Because the chancellor failed to consider the totality of the circumstances in deciding the issue of child custody, we reverse the chancellor's judgment and remand this case for a new trial. On remand, the chancellor is directed to reconsider the issue of child custody giving due consideration to the totality of the circumstances. Because it is possible that custody may be modified on remand, the chancellor is also directed to reconsider the issue of child support.
¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Amy testified that she did not have a number to contact Richard while he was offshore. She stated that she called him to tell him about the rape as soon as he returned.
[2] Albright v. Albright, 437 So.2d 1003 (Miss. 1983).
[3] Amy only sought counseling for C.S.P. by having the school counselor talk with her about the incident on several occasions. Amy also rejected Richard's suggestion that C.S.P. receive more professional treatment.
[4] As explained above, the chancellor made this assumption without considering the totality of the circumstances, i.e., the negative impact of Amy's frequent post-divorce moves, the lack of continuity in education and therapy, C.S.P.'s rape, and Amy's unstable cohabitation with Kennedy.