CARLTON, J.,
for the Court:
¶ 1. Tanisha Martin appeals an order by the Lafayette County Chancery Court granting a child-custody modification to Marquis Stevenson. Tanisha raises the following issues: (1) whether Marquis satisfied his burden of proof to establish the elements required for child-custody modification; (2) whether the chancellor properly applied the Albright[1] factors and made sufficient findings of fact under those factors; (3) whether the chancellor erred by modifying the child-custody agreement; (4) whether the chancellor erred by excluding evidence of Marquis’s past acts of domestic violence; (5) whether the chancellor erred by finding Tanisha’s report of abuse frivolous and imposing sanctions against her; and (6) whether the chancellor erred by ordering Tanisha to pay attorney’s fees. Finding no error, we affirm.
FACTS
¶ 2. Marquis and Tanisha were married on June 4, 2001, in Oxford, Mississippi. The couple had one minor child, Haylea. The couple separated around March 1, 2009, and entered into a property-settlement and child-custody agreement. On October 21, 2009, the Lafayette County Chancery Court entered a final judgment granting the couple an irreconcilable-differences divorce. The divorce decree approved and incorporated by reference the property-settlement and child-custody agreement wherein the parties agreed to joint legal custody of Haylea, with Tanisha maintaining primary physical custody subject to Marquis’s reasonable visitation rights.
¶ 3. On February 4, 2011, Marquis filed a petition in chancery court to hold Tanisha in contempt for frustrating his attempts to exercise his visitation and for refusing to allow him any contact with Haylea since January 2, 2011. Tanisha then filed a counterclaim for contempt based on an arrearage in child-support payments and for alleged damage to Hay-lea’s hair. The chancellor found that Tanisha lacked standing to bring the claims raised in her counterclaim and therefore dismissed her counterclaim without prejudice. The chancellor further found Tanisha in contempt for denying Marquis his visitation with Haylea, and the chancellor ordered Tanisha to pay attorney’s fees to Marquis.
¶ 4. On May 16, 2011, Tanisha filed a civil lawsuit in Lafayette County Circuit Court on Haylea’s behalf for damages against Marquis and his friend LaShae Walker. The lawsuit alleged that Haylea had suffered personal injuries due to hair styling performed by Walker. Tanisha also filed a motion for a temporary restraining order and a preliminary injunction to prevent Walker from further styling or treating Haylea’s hair. Marquis and Walker filed a joint motion to dismiss all claims and for summary judgment, or in the alternative, to transfer the case to chancery court. The circuit court judge subsequently transferred the case to chancery court based on lack of subject-matter jurisdiction, and the case was consolidated with a complaint filed by Marquis in chancery court on June 22, 2011, for modification of custody, for citation of contempt, and for other relief.
¶ 5. In his June 22, 2011 petition, Marquis asserted that since the divorce decree substantial and material changes in circumstances adverse to Haylea’s health and welfare had occurred to warrant a modification of the custody arrangement. Spe *744 cifically, Marquis alleged that Tanisha had engaged in ongoing behavior and actions to alienate Haylea from him and to frustrate his visitation attempts with Haylea. As a result, Marquis requested that the chancellor: (1) award him sole legal custody and primary physical custody of Haylea, with reasonable visitation rights for Tanisha; (2) find Tanisha in contempt for her failure to abide by the terms of the divorce decree; (3) order Tanisha to pay the costs of reasonable attorney’s fees, service-of-process fees, and other court costs; (4) order Tanisha to cooperate with Marquis in obtaining counseling for Haylea; and (5) appoint a guardian ad litem (GAL) for Haylea and require Tanisha to share an equal part of the cost for the GAL’s representation.
¶ 6. The chancellor entered an order on July 8, 2011, stating that the appointment of a GAL was not appropriate at that time. However, he reserved the right to revisit the issue should the need arise. The chancellor also noted that the parties had already agreed to counseling for Haylea with Dr. Heather Hartwell, who would be actively engaged in assessing Haylea’s emotional well-being and recommending ways that the parties could alleviate outside stressors on Haylea’s life.
¶ 7. On October 11, 2011, the chancellor entered another order to address issues arising during a hearing held on September 28, 2011. With regard to Tanisha’s lawsuit originally filed in circuit court, the chancellor noted that he had specifically directed Tanisha at the last hearing in the case in March 2011 to bring any future issues related to Haylea’s hair back to the chancery court. Because Tanisha failed to come before the chancery court to get prior authorization before filing the lawsuit in circuit court, the chancellor found the lawsuit void ab initio and dismissed the claims without prejudice. The chancellor also provided Tanisha with a thirty-day window to file a petition in chancery court to explain her justification for filing a personal-injury lawsuit on Haylea’s behalf.[2] As to Marquis’s request for attorney’s fees and expenses related to the circuit court lawsuit, the chancellor found the filing of the lawsuit in circuit court improper and awarded Marquis the full amount of his attorney’s fees and expenses incurred in defending the lawsuit.
¶ 8. The chancellor further found that “material changes in circumstances adverse to the best interest of the minor child ha[d] occurred in the home of the primary custodial parent” since the entry of the divorce decree. Regarding the stability of the custodial home, the chancellor observed that Tanisha was currently six months pregnant and unmarried, though she was engaged to be married. The chancellor also stated that the parties had previously agreed on certain extended visitation periods for Marquis but that Tanisha had “unilaterally reduced and virtually eliminated” them. The chancellor further found that Tanisha had interfered with *745 Marquis’s relationship with Haylea and that Dr. Hartwell’s testimony revealed that the lack of contact with Marquis, as well as Tanisha’s hostile attitude toward him, had adversely affected Haylea. The chancellor reserved his ruling on the issue of modification of physical custody and ordered the parties to continue counseling with Dr. Hartwell. The chancellor also increased Marquis’s visitation with Haylea.
¶ 9. Following a hearing on December 6, 2011, the chancellor entered another order on February 6, 2012, in which he: (1) addressed a petition for contempt filed by Marquis for Tanisha’s failure to pay attorney’s fees awarded at the September 28, 2011 hearing; and (2) reviewed the temporary custody and visitation arrangement established at the earlier hearing. The chancellor found Tanisha in contempt for failing to pay attorney’s fees to Marquis and ordered her to pay an additional $500 in attorney’s fees for Marquis’s expenses incurred in filing the petition for contempt.
¶ 10. During the hearing the chancellor heard testimony from the parties, Haylea’s third-grade teacher, Katie Pearson, and Haylea’s principal, Latonya Robinson. He also reviewed an interim report submitted by Dr. Hartwell. Tanisha claimed that Haylea was having difficulty adjusting to the additional visitation with Marquis. She further alleged that the problems were so severe that she felt the need to schedule additional counseling for Haylea with the elementary-school counselor. Tanisha arranged for this additional counseling without notifying Marquis.
¶ 11. Despite Tanisha’s allegations, the chancellor found that the testimony provided by Pearson and Robinson failed to corroborate her claims. Pearson testified that Haylea performed well in school and that her conduct was that of a typical third-grade student. Pearson also testified that she and Marquis communicated via email about Haylea and that he often ate lunch with Haylea and picked her up from school. According to Pearson, Hay-lea had not exhibited any signs of stress or anxiety. The chancellor also found that Robinson’s testimony failed to corroborate Tanisha’s claims “that [Haylea] has suffered in any way, shape[,] or form from the current custody and visitation arrangement.”
¶ 12. The chancellor found that Haylea had not experienced any problems due to Marquis’s increased visitation with her. Instead, the chancellor stated that any problems existed “because of conflicts between the parents, and the [e]ourt specifically finds that [Tanisha] is causing most of the problems. The [c]ourt finds that [Tanisha’s] testimony is not credible in many areas.” The chancellor ordered the parties to continue their counseling sessions with Dr. Hartwell and found that Haylea’s best interests would be served if she had an additional extended weekend of visitation each month with Marquis. The chancellor also decided to reserve his final ruling on permanent custody, visitation, and child support issues until he received Dr. Hartwell’s recommendations as to what she believed would be in Haylea’s best interest.
¶ 13. On the morning of April 4, 2012, the date scheduled by the chancellor for review of the temporary custody and visitation schedule, Tanisha filed a report with the Department of Human Services (DHS). In her report, Tanisha alleged that two weeks earlier Marquis had physically abused Haylea by hitting her with a softball during softball practice. Because of the child-abuse allegations, the chancellor appointed a GAL, Robin Minyard, to investigate the claim and to make a recommendation as to what was in Haylea’s best interest. The chancellor also ordered the *746 parties to share Minyard’s fees, to continue their counseling sessions, and to continue a temporary visitation schedule. Because Dr. Hartwell temporarily closed her practice for maternity leave, the chancellor ordered the parties to agree on a replacement, and if they could not agree, Minyard was to select a replacement who would submit her recommendations to the chancellor.[3]
¶ 14. Following a final hearing on July 30, 2012, the chancellor entered an opinion on October 6, 2012. In the opinion, the chancellor found that at the final hearing Minyard made the following recommendations: (1) Tanisha’s DHS report of physical abuse by Marquis against Haylea was completely unsubstantiated; (2) due to Tanisha’s interference with Marquis’s visitation and her attempts to undermine his relationship with Haylea, a material change in circumstances adverse to Hay-lea’s best interest had occurred; and (3) the only resolution to the co-parenting conflicts was to grant the parties “joint physical custody, with alternating weeks, so that each would have an equal amount of time” with Haylea.
¶ 15. The chancellor also found that Tanisha had engaged in inappropriate discussions with Haylea regarding the ongoing litigation over custody and visitation-rights issues. Furthermore, the chancellor found that Tanisha had repeatedly placed all the blame on Marquis for her conflict with him and had thus refused to “acknowledge any responsibility on her part for these conflicts and difficulties in co-parenting.” Because Tanisha had provided contradictory statements as to the adverse effect on Haylea caused by increased visitation with Marquis, the chancellor found Tanisha’s testimony on the issue not credible. He noted that this finding was supported by the testimony of others, which failed to corroborate Tanisha’s allegations.
¶ 16. With regard to Tanisha’s income, the chancellor found: (1) that her net adjusted gross monthly income was $2,808; (2) that she worked as a registered nurse; (3) that she admitted to working on an as-needed basis; (4) that she maintained control over whether or not she wanted to work; and (5) that, on average, she worked only twelve to twenty-four hours a week. Based on these findings, the chancellor found that Tanisha was “voluntarily under-employed in regard to the total amount of income that she [wa]s capable of earning on a full-time basis as a registered nurse.” As to Marquis’s income, the chancellor found that his net adjusted gross monthly income was $4,983.
¶ 17. The chancellor noted that Andrea Griffin, the DHS social worker who investigated Tanisha’s report of physical abuse, had concluded that under DHS’s definition of “physical abuse” the incident failed to constitute abuse against Haylea. The investigation was therefore dismissed “because the allegation of abuse was totally unsubstantiated.” On Griffin’s suggestion, however, Marquis had taken steps to securely store two guns in his possession. Based on the investigation conducted by Griffin and Minyard, the chancellor found that Tanisha’s report of physical abuse “was not only totally unsubstantiated, but it was also a frivolous filing that was designed to delay the hearing in this case, and cause [Marquis] to incur substantial additional expenses in the form of attorney’s fees.” The chancellor also stated that the “frivolous report” was the only *747 reason a GAL and substitute counselor were appointed.
¶ 18. Following these findings, the chancellor conducted an analysis of the Albright factors. The chancellor found that while Haylea was in excellent physical health, she was prone to clinical levels of anxiety and depression when her parents were in conflict with each other. The chancellor found that, because Tanisha engaged in ongoing behavior that exacerbated the conflict with Marquis, this factor weighed in Marquis’s favor.
¶ 19. Because Tanisha received primary physical custody of Haylea following the parties’ divorce, the chancellor found that this factor regarding continuity of care prior to (and after) the parties’ separation weighed slightly in Tanisha’s favor. However, the chancellor found that the factor pertaining to parenting skills weighed strongly in Marquis’s favor. Marquis no longer used corporal punishment, but Tanisha did. In addition, Marquis had demonstrated concern for every aspect of Haylea’s life, while Tanisha had exposed Haylea to “adult issues concerning the court proceedings^] which reflected extremely poor judgment and parenting skills, and which was detrimental to the best interest of the child.” Also, the chancellor found that Tanisha’s action of filing a frivolous DHS report had exposed Haylea to interviews with strangers about her family life, and that Tanisha had shown no regard for the effect this event would have on Haylea.
¶ 20. The chancellor found that the following factors weighed equally in both parties’ favor: (1) willingness and capacity to provide primary childcare; (2) employment responsibilities of the parent; (3) physical and mental health and age of the parent; (4) emotional ties between the parent and the child; (5) home, school, and community record of the child; and (6) stability of the home environment and employment responsibilities of the parents.
¶ 21. As to the parties’ moral fitness, the chancellor found that this factor weighed slightly in Marquis’s favor. When Haylea visited, Marquis did not have overnight guests of the - opposite sex. However, at the time of the original petition for modification of child custody, Tanisha cohabited with her fiancé, whom she had since married, and she gave birth to another child during the proceedings. Taking into account any other relevant factors, the chancellor observed that Min-yard’s GAL report noted “instances where[,] upon returning from [Tanisha’s] care, Haylea’s appearance was disheveled and substandard, whereas, when she is in [Marquis’s] care, the child is always well-dressed and neatly groomed.”
¶ 22. The chancellor concluded that the Albright factors weighed more heavily in Marquis’s favor, supporting a modification of custody. The chancellor also found that a material change in circumstances adverse to Haylea’s best interest had occurred in Tanisha’s home. The chancellor therefore modified the divorce judgment and granted primary physical custody of Haylea to Marquis, with Tanisha having visitation on alternating weeks so that the parties could essentially’ share equal time with Haylea. The chancellor also terminated Marquis’s monthly child-support payments, finding that Tanisha should no longer receive them since the parties would each have Haylea approximately fifty percent of the time and since Tanisha was underemployed.
¶23. As a result of his findings, the chancellor ordered Tanisha to pay: (1) attorney’s fees to Marquis incurred when the April 4, 2012 hearing was delayed; (2) all counseling fees charged by Dr. Hartwell; (3) all counseling fees charged by Dr. Love, the replacement counselor; and (4) *748 all attorney’s fees charged by Minyard. The chancellor denied Marquis’s request that Tanisha pay his attorney’s fees incurred at the final hearing; however, the chancellor did order Tanisha to pay Marquis for the preparation of the transcripts incurred in the proceedings. Feeling aggrieved by the chancellor’s judgment, Tanisha appeals.
STANDARD OF REVIEW
¶ 24. When supported by substantial evidence, a chancellor’s findings will not be disturbed on appeal unless the chancellor abused his discretion, was manifestly wrong, was clearly erroneous, or applied an erroneous legal standard. Herring Gas Co. v. Whiddon, 616 So.2d 892, 894 (Miss.1993).
DISCUSSION
I. Whether Marquis satisfied his burden of proof to establish the elements required for child-custody modification.
II. Whether the chancellor properly applied the Albright factors and made sufficient findings of fact.
III. Whether the chancellor erred by modifying the child-custody agreement.
¶ 25. Tanisha first argues that Marquis failed to establish the required elements under the legal standard for child-custody modification. She also argues that the chancellor improperly applied the Albright factors and made insufficient findings of fact under the factors. As a result, Tanisha further contends that the chancellor erred by modifying the parties’ child-custody agreement. For the sake of brevity and clarity, we will discuss Tanisha’s first three arguments together.
¶ 26. “Any order for joint custody may be modified or terminated upon the petition of both parents or upon the petition of one ... parent showing that a material change in circumstances has occurred.” Miss.Code Ann. § 93-5-24(6) (Rev.2013). “The party who petitions for modification of child custody bears the burden of proof by a preponderance of the evidence.” Mercier v. Mercier, 11 So.3d 1283, 1286 (¶ 7) (Miss.Ct.App.2009) (citation omitted). In the present case, only Marquis sought modification of the child-custody order. Therefore, as the noncustodial parent, Marquis bore the burden of proving: “(1) that a material change of circumstances ha[d] occurred in the custodial home since the most recent custody decree, (2) that the change adversely affected] the child, and (3) that modification [was] in the best interest of the child.” Powell v. Powell, 976 So.2d 358, 361 (¶ 11) (Miss.Ct.App.2008) (citation omitted). Furthermore, “[mjodification must be based on conduct of the custodial parent that poses a danger to the mental or emotional health of the child.” Id. “In determining whether a material change in circumstances has occurred, the chancellor must consider the totality of the circumstances.” Id. We recognize that as the trier of fact the chancellor possesses “the ultimate discretion to weigh the evidence the way he sees fit.” Johnson v. Gray, 859 So.2d 1006, 1013-14 (¶ 36) (Miss.2003). “[T]he chancellor is in the best position to make this determination because it is his role to ascertain whether witnesses and evidence are credible and the weight to give to each.” Id. at 1014 (¶ 37) (citation and internal quotation marks omitted). As previously acknowledged, this Court will not disturb a chancellor’s findings of fact when they are supported by substantial credible evidence. Herring Gas Co., 616 So.2d at 894.
*749 ¶ 27. In his October 11, 2011 order, the chancellor found that a material change in circumstances adverse to Haylea had occurred in Tanisha’s home, which was the home of the primary custodial parent. In support of this finding, the chancellor identified Tanisha’s extramarital relationship with her fiancé as one factor contributing to the material change in circumstances adversely affecting Haylea and the stability of her home environment. Specifically, the chancellor noted that at the time of his October 2011 order Tanisha was six months pregnant and unmarried. In addition to this consideration, the chancellor found that Tanisha had not only “unilaterally reduced and virtually eliminated” Marquis’s extended visitation periods with Haylea but had also attempted to interfere with the relationship between Marquis and Haylea. The chancellor also heard testimony from Dr. Hartwell, Haylea’s court-appointed counselor, who stated that Hay-lea had been adversely affected by her lack of contact with Marquis and by Tanisha’s hostile attitude toward him. Based on these findings, the chancellor found that a material change in circumstances had occurred since the divorce decree.
¶28. Having previously found that a material change in circumstances adverse to Haylea had occurred in Tanisha’s home, the chancellor proceeded to determine in his October 6, 2012 opinion whether modification of custody would be in Haylea’s best interests. The chancellor considered the testimony of the parties, the testimony and recommendations provided by Hay-lea’s court-appointed GAL and counselor, and the testimony of the DHS worker assigned to investigate the report of physical abuse.
¶ 29. Based on an investigation by Griffin, the DHS worker, and Minyard, Hay-lea’s court-appointed GAL, the chancellor found that Tanisha’s report of physical abuse was completely unsubstantiated and constituted a frivolous filing. Minyard also recommended that Tanisha’s attempts to interfere with Marquis’s visitation and to interfere with his relationship with Hay-lea had created a material change in circumstances adverse to Haylea’s best interests, and the only solution involved joint physical custody, with Haylea spending alternating weeks with the parties. The chancellor also conducted an analysis of the Albright factors in his opinion, and he concluded that the factors weighed more heavily in Marquis’s favor.[4] He therefore granted a modification of child custody in favor of Marquis.
¶ 30. After reviewing the record, we find no abuse of discretion in the chancellor’s determination that Marquis met his burden for modification of the parties’ child-custody order.[5] We also find substantial support in the record for the chancellor’s determination that a material change in circumstances had occurred and that modification would be in Haylea’s best interests. The record further supports the chancellor’s application of the Albright factors and that his findings of fact were supported by substantial credible evidence. Accordingly, we find no abuse of discretion in the chancellor’s decision to modify the prior child-custody arrangement in the divorce decree in Marquis’s favor. We *750 therefore find that Tanisha’s first three arguments regarding these issues lack merit.
IV. Whether the chancellor erred by excluding evidence of Marquis’s past acts of domestic violence.
¶ 31. Under this assignment of error, Tanisha argues that the chancellor erred in not considering evidence of past acts of domestic violence committed by Marquis. She contends that the issue of Marquis’s past acts of domestic violence was relevant, and evidence on this issue should have been admitted and considered by the chancellor in making his determination regarding custody modification.
¶ 32. We review a trial judge’s decision of whether to admit or exclude evidence under an abuse-of-discretion standard of review. Rushing v. Rushing, 724 So.2d 911, 914 (¶ 11) (Miss.1998) (citations omitted). In Lackey v. Fuller, 755 So.2d 1083, 1085 (¶¶ 6-7) (Miss.2000), the parties obtained an irreconcilable-differences divorce, and the wife later asked for modification of the final judgment. At the hearing, the chancellor allowed into evidence testimony regarding the wife’s pre-divorce conduct. Id. at 1086 (¶ 11). In its discussion of res judicata as it applies to divorce proceedings and child-custody issues, the Mississippi Supreme Court stated:
We begin with the principles of res judi-cata[,] which command that a final judgment preclude[s] thereafter all claims that were or reasonably may have been brought in the original action. The familiar rule that a judgment for alimony, custody!,] or support may be modified only upon a showing of a post-judgment material change of circumstances is a recognition of the force of res judicata in divorce actions.
Id. at (¶ 13) (citations omitted). The supreme court concluded that the wife’s pre-divorce conduct was res judicata and that the only evidence the chancellor should have admitted was evidence pertaining to post-judgment conduct. Id. at 1087 (¶ 18).
¶ 33. In the present case, the record shows that at the September 28, 2011 hearing, Tanisha’s attorney tried to question Marquis about charges that arose pri- or to the divorce proceeding. Upon the objection of Marquis’s attorney, the chancellor asked Tanisha’s attorney whether there had been any continuation of Marquis’s conduct since the divorce decree and stated: “[U]nless you can tie some current conduct to that past conduct, I’m going to have to sustain the objection.” Because Tanisha’s attorney could not provide any evidence of domestic violence by Marquis since the divorce, the chancellor found the evidence not relevant and sustained the objection. The issue arose again during Tanisha’s testimony, and the chancellor again explained that he would sustain the objection as to any matters that occurred prior to the divorce decree but would allow testimony regarding any actions since that time.
¶ 34. Based on the record and applicable law, we find no abuse of discretion in the chancellor’s exclusion of evidence of Marquis’s past acts of domestic violence. At the hearing for modification of custody, Tanisha was only able to offer proof of acts that occurred during the marriage and pri- or to the parties’ divorce.[6] Tanisha failed to offer any evidence of current conduct occurring since the divorce. Because Tanisha failed to properly raise this claim for *751 consideration in the original divorce decree, she is barred from raising the issue now. This assignment of error therefore lacks merit.
V. Whether the chancellor erred by finding Tanisha’s report of abuse frivolous and imposing sanctions against her.
¶ 35. Tanisha next argues that the chancellor erred in finding her report of abuse frivolous and imposing sanctions against her. Because of the repercussions of Tanisha’s DHS report, the chancellor imposed sanctions against her after finding that her report of abuse was unsubstantiated. The chancellor ordered Tanisha to pay all fees charged by Dr. Hartwell and Dr. Love, and he further ordered her to reimburse Marquis for the portion of these fees that he had paid.
¶ 36. This Court reviews the decision to impose monetary sanctions against a party for abuse of discretion. See In re Spencer, 985 So.2d 330, 336-37 (¶ 19) (Miss.2008) (citation omitted). “In the absence of a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors, the judgment of the court’s imposition of sanctions will be affirmed.” Wyssbrod v. Wittjen, 798 So.2d 352, 357 (¶ 17) (Miss.2001) (citation and internal quotation marks omitted). Rule 11(b) of the Mississippi Rules of Civil Procedure permits a court to impose sanctions against a party. The rule states that “[i]f any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party ... to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys’ fees.” M.R.C.P. 11(b). The supreme court has recognized “that a pleading is frivolous only when, objectively speaking, the pleader or movant has no hope of success.” In re Spencer, 985 So.2d at 339 (¶ 28) (citation and internal quotation marks omitted). Furthermore, “[a] motion or pleading is filed for the purpose of harassment or delay when the party does not have a viable claim.” Id.
¶ 37. The record contains evidence to support the chancellor’s finding that Tanisha’s report of physical abuse, which she filed the morning of the April 4, 2012 hearing, was frivolous and “totally unsubstantiated.” As previously discussed, the chancellor considered both Minyard’s and Griffin’s statements regarding their investigation of the incident. Minyard, who served as Haylea’s court-appointed GAL, recommended that the report of abuse was unsubstantiated, and Griffin, the DHS worker assigned to the claim, dismissed her investigation because the incident failed to constitute abuse under DHS standards. As a result, in his final judgment entered October 16, 2012, the chancellor imposed sanctions against Tanisha for:
[H]er frivolous filing of the report of physical abuse, which delayed the final hearing in this case, triggered a DHS investigation, required this [c]ourt to appoint a[GAL], and required the parties to begin counseling with [Dr.] Love, who was designated to replace Dr. Hartwell. These sanctions are imposed under the [c]ourt’s inherent powers, because of [Tanisha’s] wrongful conduct in filing a frivolous report, and in attempting to interfere with [Marquis’s] relationship with [Haylea].
¶ 38. The chancellor ordered Tanisha to pay all fees charged by Dr. Love and to pay Marquis $190, the share of his fees paid to Dr. Love thus far, since Dr. Love’s services would not have been necessary *752 but for Tanisha’s filing of the frivolous DHS abuse report. The chancellor also ordered Tanisha to pay all fees charged by Dr. Hartwell and to pay Marquis $950, the share of his fees charged by Dr. Hartwell, since her services would not have been necessary but for Tanisha’s attempts to alienate Haylea from Marquis and to interfere with their relationship.
¶ 39. Because the record contains evidence to support the chancellor’s determination that Tanisha’s report constituted a frivolous filing, we find no abuse of discretion by the chancellor in making such a finding. In addition, pursuant to Rule 11 of the Mississippi Rules of Civil Procedure, we affirm the chancellor’s imposition of sanctions against Tanisha for filing the frivolous DHS report. This issue therefore lacks merit.
VI. Whether the chancellor erred by ordering Tanisha to pay attorney’s fees.
¶ 40. We next consider whether the chancellor committed manifest error by ordering Tanisha to pay attorney’s fees to Minyard, Haylea’s court-appointed GAL, and to pay Marquis’s attorney’s fees. “Unless the chancellor is manifestly wrong, his decision regarding attorney[’s] fees will not be disturbed on appeal.” Bredemeier v. Jackson, 689 So.2d 770, 778 (Miss.1997) (citations omitted). The fees “should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary.” Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992) (citation omitted). “[W]here a party’s intentional misconduct causes the opposing party to expend time and money needlessly, then attorney’s fees and expenses should be awarded to the wronged party.” State v. Blenden, 748 So.2d 77, 87 (¶ 33) (Miss.1999) (citation omitted).
¶ 41. The chancellor discussed the fees charged by Minyard, the court-appointed GAL, in the amount of $3,725. Pursuant to the standards set forth in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), the chancellor found that the fees were reasonable and necessary. He further found that Minyard was qualified and competent to serve as GAL and that her “hourly rate and total amount charged reflected her skill and standing in the legal community, and the nature of the issues raised in regard to the allegations of child abuse that she investigated.” In addition, the chancellor noted that Minyard’s fees reasonably reflected the time and labor required to fulfill her duties as GAL and that she promptly completed those duties. The chancellor also found Min-yard’s rates to be reasonable based on the “usual and customary charges for attorneys performing similar services in the local community.” He further noted that Minyard’s acceptance of the GAL appointment had prevented her from accepting other employment because of the case’s time commitments. Following a discussion of these relevant factors, the chancellor ordered Tanisha to pay the full amount of Minyard’s attorney’s fees and to pay Marquis $750, which represented his one-half share of the initial retainer that he paid to Minyard.
¶ 42. In addition to Minyard’s attorney’s fees, the chancellor ordered Tanisha to pay Marquis’s attorney’s fees amounting to $2,400, which were incurred when the April 4, 2012 hearing was postponed due to the filing of the DHS report. The chancellor stated the following as to Marquis’s attorney’s fees:
[Marquis’s] counsel has submitted to the [c]ourt a Motion for Approval of Attorney’s [F]ees, which contains an itemiza *753 tion of those fees totaling $2,400.00, based on an hourly rate of $200.00 per hour, and a total of twelve hours spent in preparation for and in attending the hearing on April 4, 2012[,] that was postponed due to [Tanisha’s] conduct. The [c]ourt finds that the fees charged ... were reasonable and necessary under the standards set forth in McKee .... Specifically, the [cjourt finds that [Marquis’s] attorney has been practicing law for twenty-six (26) years, and he provided competent representation to [Marquis], and his hourly rate and the total amount charged reflect his skill and standing in the legal community. Furthermore, the fees requested are reasonable based on the nature of the issues raised in regard to the allegations of child abuse that were raised throughout this litigation. The fees requested by [Marquis’s] attorney reasonably reflect the time and labor required to prepare for the hearings in this case, and the acceptance of this case precluded [Marquis’s] counsel from accepting other employment due to the time commitments required by this case.
¶ 43. Following these findings, the chancellor addressed Marquis’s request that Tanisha pay his attorney’s fees incurred at the final hearing, in the amount of $3,800, and the cost of preparing the transcripts for the proceedings, in the amount of $1,374.50. While the chancellor granted the request that Tanisha pay Marquis $1,374.50 for the cost of preparing the transcripts, he denied Marquis’s request for the additional attorney’s fees.
¶ 44. Based on applicable case law and the evidence in the record, we find that the chancellor did not manifestly err by ordering Tanisha to pay attorney’s fees. Therefore, this issue also lacks merit.
¶ 45. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., NOT PARTICIPATING.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).

. On November 9, 2011, Tanisha filed a petition for authority to file a claim on Haylea’s behalf, and on November 29, 2011, she filed a motion asking the chancellor to reconsider and set aside the order dismissing her complaint for damages and injunctive relief. In an order entered December 6, 2011, the chancellor denied Tanisha’s motion, finding that the motion was not well taken. Further, in an order entered February 6, 2012, the chancellor stated that Tanisha’s motion was untimely and that it should also be "denied on the merits because none of die relief requested ... is justified under the proof in this case.” Finally, in an order entered March 8, 2012, the chancellor noted that Tanisha had issued new subpoenas to Marquis and Walker in an attempt to reassert the same issues previously dismissed by the chancery court. The chancellor found Tanisha’s actions untimely and denied her request to reassert the claims.

. After the parties failed to agree on a replacement for Dr. Hartwell, Minyard selected Dr. Gillian Love as a replacement.

. See McCarty v. McCarty, 52 So.3d 1221, 1229 (¶ 38) (Miss.Ct.App.2011) (affirming the chancellor's determination that a material change in circumstances had occurred and his analysis of the Albright factors in determining that a change in custody was in the children’s best interest).

. Id. at 1224-25 (¶ 11) (discussing the limited standard of review on appeal for cases involving child custody).

. The chancellor acknowledged that he appointed a GAL after Tanisha filed a DHS abuse report claiming that Marquis physically abused Haylea at softball practice. However, the report was found to be unsubstantiated.