MAXWELL, J.,
for the Court:
¶ 1. A parent seeking modification of a previous child-custody order bears the initial burden of proving (1) a material change in circumstances adversely affecting his children’s welfare and (2) that a change of custody is in the child’s best interest. In this case, the chancellor determined a father petitioning for modification had not met this burden.
¶ 2. Though the maternal grandmother had falsely accused the father of sexually abusing his two sons, which led to criminal charges that were later dropped, the chancellor found that this circumstance, while adversely affecting the father, did not adversely affect the children. So the chancellor concluded changing custody was not in the children’s best interest. Because we find no abuse of discretion in the chancellor’s decision, we affirm the denial of the father’s petition to modify custody.
¶ 3. We also affirm the denial of his petition to hold the mother in contempt. While the chancellor did not expressly address each specific request for contempt and injunctive relief the father had made, we are instructed to assume he resolved these additional issues in favor of the mother, as appellee. And we likewise find no abuse of discretion in this decision.
Background
¶ 4. When Kyle James and Jennifer James[1] divorced in December 2008, they agreed Jennifer would have primary physical custody of their two sons, then ages eight and three, and that Kyle would have visitation on alternating weekends. But in May 2010, Kyle petitioned the Jackson County Chancery Court to find Jennifer in contempt and to modify the boys’ custody so that he shared custody “50/50.” In his petition, Kyle alleged Jennifer had interfered with his scheduled visitation and efforts to be involved in the boys’ schoolwork. He also alleged Jennifer had allowed the boys to engaged in “dangerous” activities. Jennifer filed a counterclaim, asking that Kyle’s visitation be supervised. She asserted Kyle had been too rough physically when disciplining their sons.
¶ 5. While their requests were pending, Jennifer’s mother contacted the Department of Human Services (DHS) and reported Kyle had sexually abused his younger son-allegations later proven to be false. In response, Kyle filed a motion to enjoin Jennifer’s mother from contacting the boys. He also requested the court order a psychological examination of the boys and “clarify visitation.”
¶ 6. Kyle’s motions for an injunction against Jennifer’s mother, a psychological evaluation, and a clarification of visitation initially came before the court on a “motions day,” November 8, 2011. Because the chancellor quickly realized he would need to hear testimony before ruling on Kyle’s requests for a psychological exam and for an injunction against Jennifer’s mother, the chancellor postponed those issues to another hearing on December 20, 2011. But the chancellor temporarily ordered Jennifer’s mother to stay away from the boys until the hearing. The chancellor also ordered both parents not to discuss with the boys any of the custody issues, particularly the abuse allegations.
*191 ¶ 7. At the December 20, 2011 hearing, the chancellor lifted the injunction against Jennifer’s mother. But he reminded her she was ordered not to discuss with the boys any of the allegations she had made against Kyle. The chancellor also helped the parents negotiate a workable holiday-visitation plan. The chancellor did not, however, rule on Kyle’s request for a psychological examination because Kyle did not bring it up.
¶ 8. On February 7, 2011, the chancellor heard Kyle’s motion for custody modification, which Kyle had amended the month before, adding the fallout from false sexual-abuse allegations as an additional material change in circumstances adversely affecting the boys. On March 16, 2012, the chancellor entered a “Final Judgment,” specifically denying Kyle’s request for a modification of custody. While acknowledging that Jennifer had some parenting issues and that, because of the false sexual-abuse allegations, the boys had been subjected to examinations and interviews, the chancellor did not find a material change in circumstances adversely affecting the boys warranting a change in custody-
¶ 9. On April 12, 2012, Kyle filed a notice of appeal of the March 16 order.
Discussion

I. Modifícation of Custody

¶ 10. Our review of a chancellor’s child-custody decision is narrow. Mabus v. Mabus, 847 So.2d 815, 818 (¶ 8) (Miss.2003). “We will not disturb a chancellor’s factual findings unless the chancellor’s decision was manifestly wrong or clearly erroneous, or the chancellor applied an improper legal standard.” Wilson v. Wilson, 79 So.3d 551, 560 (¶ 37) (Miss.Ct.App.2012) (citing Wallace v. Wallace, 12 So.3d 572, 575 (1112) (Miss.Ct.App.2009)). Nor will we substitute our judgment for the chancellor’s, “even if we disagree with the findings of fact and would arrive at a different conclusion.” Id. (quoting Coggin v. Coggin, 837 So.2d 772, 774 (¶ 3) (Miss.Ct.App.2003)). But we do review the chancellor’s application and interpretation of the law de novo. Id.
¶ 11. Here, the chancellor applied the proper legal framework for resolving Kyle’s request to modify custody. “[T]o modify a previous child custody order, three distinct prerequisites must be satisfied: (1) the party seeking the change bears the initial burden of proving there has been a material change in circumstances; (2) the change must be adverse to the child’s welfare; and (3) the chancellor must find a change in custody is in the best interest of the child.” Anderson v. Anderson, 961 So.2d 55, 58 (¶ 6) (Miss.Ct.App.2007) (citing Thompson v. Thompson, 799 So.2d 919, 922 (¶8) (Miss.Ct.App.2001)).
¶ 12. The chancellor found there was some evidence to support Kyle’s allegations that the first prerequisite — a material change in circumstances — had been met. The chancellor voiced concerns “that the younger child, who [was] six (6), should be in a car seat even now, and that the children have tardies [that] some may consider excessive.” The chancellor also acknowledged that the false sexual-abuse allegations had resulted in the children being interviewed and examined. But the chancellor found Kyle had failed to prove the second prerequisite — that Jennifer’s actions had an adverse affect on the children.
¶ 13. Though Jennifer frequently failed to get her sons to school on time, the chancellor did not find this fact justified uprooting the boys from their school and home community. And while the false sexual-abuse allegations certainly adversely affected Kyle, they did not adversely *192 affect his sons. Consequently, the chancellor found it was not in the boys’ best interest to modify custody. So with Kyle also failing to show the third prerequisite, the chancellor denied Kyle’s modification request without further analysis. Cf. Anderson, 961 So.2d at 58 (¶ 6) (requiring the chancellor, if he finds all three prerequisites have been met, “to make on-the-record findings for each of the Albright factors”).

A. False Allegations of Sexual Abuse

¶ 14. On appeal, Kyle insists the chancellor reversibly erred by not finding the false allegations of sexual abuse warranted a change in custody. In support, he cites our recent Wilson opinion, in which we found no fault with the chancellor’s finding an adverse material change in circumstances based on the mother’s actions, which included falsely accusing the father of child abuse. Wilson, 79 So.3d at 563-64 (¶¶ 52-54). But in that case, there was proof of an adverse impact on the child. In Wilson, the child engaged in self-harm soon after visitation with her father had been cut off due to the allegations. Id. at 564 (¶ 54). Further, the false allegations were part of a larger pattern of behavior by the mother to alienate her child from her ex-husband, which the mother continued despite the high anxiety her daughter suffered because of it. Id.; see also Jernigan v. Jernigan, 830 So.2d 651, 652-54 (¶¶ 3-6) (Miss.Ct.App.2002) (finding no error in the chancellor’s finding of a material change in circumstances based on the mother’s false allegations of child sexual abuse, which combined with other factors showed the mother was willing to sacrifice her child’s mental and emotional health in order to get custody).
¶ 15. Here, the chancellor did not find the allegations of sexual abuse were part of a pattern of behavior by Jennifer to alienate the boys from Kyle, let alone that Jennifer persisted in that pattern despite evidence the boys were being harmed. In fact, the chancellor did not find Jennifer was the one who falsely accused Kyle. Instead, it was her mother who made the bogus report to DHS. Cf. Morrow v. Morrow, 591 So.2d 829, 833 (Miss.1991) (“[O]nly parental behavior that poses a clear danger to the child’s mental or emotional health can justify a custody change.” (Emphasis added)). And we find the chancellor appropriately exercised his equitable powers by enjoining Jennifer’s mother, first, from seeing the boys, and then, after a more thorough hearing, from speaking to the boys about the allegations or otherwise interfering with custody and visitation matters.
¶ 16. Kyle argues that because Jennifer was complicit in her mother’s actions, the false allegations should be attributed to her. But even if this were so, we still find no abuse of discretion in the chancellor’s finding that the boys were not adversely affected. Beyond the boys having to be interviewed about the allegations, the chancellor found no harm. Instead, it was Kyle who bore the brunt of the consequences of his ex-mother-in-law’s actions. And to warrant a change in custody, the material change in circumstance “must be adverse to the child’s welfare.” Anderson, 961 So.2d at 58 (¶ 6) (emphasis added). It is not enough to show an adverse effect on the non-custodial parent.
¶ 17. Because Kyle has failed to show the chancellor’s finding — that the children’s welfare had not been adversely affected — was manifestly wrong or clearly erroneous, we will not disturb this decision on appeal. See Wilson, 79 So.3d at 560 (¶ 37).

B. Lack of Psychological Examination

¶ 18. Kyle claims he was hamstrung in his ability to prove an adverse effect on the boys because the chancellor *193 “failed to grant” Ms motion for a psychological evaluation. But Kyle did not push for a hearing on his motion. Instead, when Kyle’s motion was first brought up on November 8, 2011, the chancellor was clear that he would not consider the motion without further evidence. And when the evidentiary hearing was held on December 20, 2011, Kyle neither brought the motion up for hearing nor reasserted his request that his boys be examined — despite knowing that the modification hearing was less than two months away. See Allgood v. Allgood, 473 So.2d 416, 423 (Miss.1985) (citations omitted) (“As a prerequisite to obtaining review in this Court, it is incumbent upon a litigant that he not only plead but press his point in the trial court.”). Because Kyle did not ask for definitive ruling on his request but instead proceeded to the final custody-modification hearing, we are instructed to assume he abandoned his request. See Cossitt v. Alfa Ins., 726 So.2d 132, 135 (¶ 12) (Miss.1998) (citations omitted) (“A motion that is not ruled upon is presumed abandoned”).

II. Other Requests for Relief

¶ 19. As a final procedural matter, we find the chancellor’s judgment was a final judgment, disposing of all of Kyle’s pending claims against Jennifer. In his brief, Kyle asserts that “there were other issues presented to the court for adjudication that were not ruled upon in the court’s Final Judgment.”
¶ 20. Kyle asks us to find “error” in the court’s failure to rule. But as a court of error correction, we can only find error in the decisions a lower court has made — we cannot find error in the failure to make a decision. If the lower court had not yet made a decision, the only assistance the appellate court may provide is mandamus — an order by the supreme court to make a ruling. See M.R.A.P. 15. We cannot “reverse” the absence of a ruling through an appeal.
¶ 21. We have, however, found the failure to rule on all pending issues in a domestic matter means the decision that was made was not a final, appealable judgment. E.g., R.A.S., Jr. v. S.S., 66 So.3d 1257, 1261 (¶¶ 19-20) (Miss.Ct.App.2011). This means, were Kyle’s assertion of unresolved issues correct, our course of action would be to dismiss the appeal for lack of appellate jurisdiction, and not to find error.
¶22. But we find Kyle’s assertion is incorrect. Many of the purported unresolved claims were actually resolved in pri- or hearings — especially the December 20, 2011 hearing where many of the problems concerning Kyle’s visitation issues were addressed. And it also clear from the chancellor’s March 2012 order that he was denying all of Kyle’s pending claims against Jennifer, including his request that Jennifer be held in contempt for certain actions and enjoined from performing others.
¶ 23. In this order — labeled “Final Judgment” — the chancellor noted that, in addition to the motion to modify custody, “[vjarious other pleadings were filed and heard in this matter.” The chancellor issued this order after “[t]he final trial date [on] February 7, 2012.” While the chancellor’s order only discussed his factual findings regarding the denial of Kyle’s request to modify custody, it implicitly denied the remainder of Kyle’s requests.
¶ 24. If Kyle was unsatisfied that the order did not recite the chancellor’s findings regarding the denial of his requests for a citation of contempt and an injunction, he could have asked the chancellor to “find the facts specially and state separately [his] conclusions of law thereon” within ten days following the entry of the final judgment. M.R.C.P. 52. But Kyle did not. Instead, he filed a notice of appeal. See M.R.A.P. 3, 4.
*194 ¶ 25. On appeal, because “the chancellor made no specific finding[s] on [whether Jennifer’s alleged actions were true and warranted citation for contempt or an injunction], ‘we are required by our prior decisions and by sound institutional considerations to assume that the chancellor resolved all such fact issues in favor of [the] appellee’” — in this case, Jennifer. Wilburn v. Wilburn, 991 So.2d 1185, 1193 (¶ 19) (Miss.2008) (quoting Cheek v. Ricker, 481 So.2d 1139, 1143-44 (Miss.1983)). And because Kyle has not shown any reason why the chancellor erroneously favored Jennifer on these issues as well, we affirm the chancellor’s final judgment and his final resolution in favor of Jennifer on all of Kyle’s post-divorce claims.
¶ 26. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT. CARLTON, J., CONCURS IN RESULT ONLY.

. Due to the allegations of child sexual abuse, the chancellor sealed this case as confidential. The names of both parties have been changed to maintain confidentiality. See M.R.A.P. 48A.