# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01465-COA

**BOBBY SCOTT CULBERSON**                                      **APPELLANT**

v.

**TAMMI LETITIA CULBERSON**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/09/2014 |
| TRIAL JUDGE: | HON. JOHN S. GRANT III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER A. TABB |
| ATTORNEY FOR APPELLEE: | M. JUDITH BARNETT |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | ORDERED ATTORNEY'S FEES PAID FOR BACK CHILD SUPPORT; DENIED OTHER CONTEMPT MOTIONS; DENIED MODIFICATION OF CHILD SUPPORT; MODIFIED VISITATION |
| DISPOSITION: | AFFIRMED: 03/15/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Scott and Tammi Culberson were divorced in 2005, with Tammi getting physical custody of their two daughters. In 2013, Tammi filed a contempt petition alleging that Scott was in arrears as to child support and various education expenses he had been required to help pay. The petition also sought to increase those obligations. Scott filed his own petition for contempt, alleging that Tammi had denied him visitation, and he also sought to terminate his child support obligation because he alleged the girls – who were sixteen and nineteen at

the close of the trial – would no longer speak to him.

¶2. The hearing was held on three separate days over almost a year. On the second day, in January 2014, the chancellor accepted a proffered agreement of the parties that Scott and his daughters would attend counseling to repair their relationship. The parties also settled some of their initial financial disputes, and they agreed to suspend Scott's legally binding child support obligations, based on the daughters' statements that they believed Scott only helped provide for them because he was required to do so by court order. The chancellor instructed Tammi's attorney to prepare an order implementing these agreements, but one was never entered. Apparently, it was expected that Scott would continue to pay the support voluntarily, but after the agreement he ceased paying for many of the things he had previously been ordered to pay, including monthly child support paid directly to Tammi.

¶3. On the third hearing date, in August 2014, it was reported that the attempts to reconcile Scott to his daughters had met only limited success – they had attended counseling, but separately at the daughters' request. They had met for lunch about once a month, at the counselors' suggestion, but continued to have little contact and no overnight visitation. The older daughter testified that she still hoped for a relationship with her father, but she faulted him for a lack of initiative and enthusiasm, and she admitted she would prefer a gradual reintroduction. At trial, Scott asked either that the court order his daughters to visit or that his support obligation be terminated based on their refusal to visit with him.

¶4. The chancellor found Scott in contempt for his failure to pay certain child support

2

obligations in a timely fashion, and he awarded Tammi $2,500 in attorney's fees for that portion of the action. The chancellor otherwise declined to find either party in contempt and denied Scott's request to find Tammi in contempt for her failure to force their daughters to participate in visitation. Next, the chancellor ordered that the visitation schedule be modified so that visitation would be allowed at any time, as long as both Scott and the children agreed. The chancellor also found that because no order was entered modifying the child support obligation, Scott was responsible for paying the child support to Tammi during the time they had agreed it would be voluntary.

¶5.     Scott has appealed. We find no error and affirm.

## STANDARD OF REVIEW

¶6.     "When [an appellate court] reviews a chancellor's decision in a case involving divorce and all related issues, [the court's] scope of review is limited by the substantial evidence/manifest error rule." *Yelverton v. Yelverton*, 961 So. 2d 19, 24 (¶6) (Miss. 2007). A chancellor's factual findings will not be disturbed unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Carambat v. Carambat*, 72 So. 3d 505, 510-11 (¶24) (Miss. 2011). As long as substantial evidence supports the chancellor's findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010). Additionally, if the chancellor has made no specific findings, we generally proceed on the assumption that he resolved all such fact issues in favor of the appellee. *Ferrara v. Walters*,

3

919 So. 2d 876, 881 (¶8) (Miss. 2005) (citing *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990)). Questions of law, on the other hand, are reviewed de novo. *Irving v. Irving*, 67 So. 3d 776, 778 (¶11) (Miss. 2011).

## DISCUSSION

### 1. Contempt

¶7. Scott contends that the chancellor erred in finding him in contempt for not paying child support after the February 2014 temporary agreement that it would be voluntary. This argument appears to be based on a misunderstanding of the chancellor's decision; the chancellor found Scott in contempt for failing to pay child support that was due prior to Tammi's initial contempt motion. The chancellor expressly declined to find Scott in contempt regarding the support due after the February 2014 agreement. Announcing his ruling from the bench, the chancellor said:

> Is Mr. Culberson in contempt for failure to pay child support since February of 2014, and for failure to pay medical bills, and for failure to pay that $1,000 that was due for extra curricular activities? The answer is no, he's not in contempt. He didn't think he owed it; but there was never an order entered.

The written judgment that followed also expressly declined to find Scott in contempt. We find no merit to this issue.

### 2. Back Child Support

¶8. Next, Scott argues that the chancellor erred in requiring him to pay the monthly child support that came due during the time he and Tammi had agreed paying it would be voluntary. The agreement was announced in open court and approved by the chancellor; but

4

no order was ever entered. Scott argues on appeal that the chancellor should have entered the order nunc pro tunc, so that it would have retroactive effect.

¶9. This issue is procedurally barred, because so far as the record reveals, this entire issue has been raised for the first time on appeal. Scott never submitted an order implementing the agreement, much less asked that it be entered nunc pro tunc, the relief he now seeks. Before the chancery court, Scott's argument was brief and unclear, but he appears to have argued only that the agreement to end child support should be incorporated into the final judgment, ending child support going forward from the August 2014 hearing date – not for an order implementing the agreement retroactively.

¶10. The Mississippi Supreme Court "has long held that it will not consider matters raised for the first time on appeal." *Fowler v. White*, 85 So. 3d 287, 293 (¶21) (Miss. 2012) (citation omitted). This is because the "practice would have the practical effect of depriving the trial court of the opportunity to first rule on the issue, so that we can then review such trial court ruling under the appropriate standard of review." *Id.* (citation omitted). This issue is procedurally barred.

¶11. Notwithstanding the procedural bar, it is clear that under Mississippi law, the chancellor was correct in his determination that, absent an order entered on the minutes, the child support obligation continued. "Only the court can grant a judgment to modify a parent's support obligation; thus, a party making an extrajudicial modification does so at his peril." *Brewer v. Holiday*, 135 So. 3d 117, 121 (¶15) (Miss. 2014) (citations and internal quotation

marks omitted). When the chancery court does not enter an order implimenting an agreement of the parties, it does not err in refusing to enter it later, nunc pro tunc. *Id.*; *see also Shumake v. Shumake*, 147 So. 3d 352, 356 (¶14) (Miss. 2014).

### 3. Modification of Visitation

¶12. Finally, Scott argues that the chancellor erred in modifying the visitation schedule. The initial order had called for regular overnight visitation, holidays, and so forth, but the testimony at trial was that it had not been followed for years. At the second day of the hearing, the chancellor ordered Scott and his daughters to attend counseling, which met with limited success.

¶13. Scott blamed his daughters, and they apparently blamed him; but the daughters had also continuously expressed a desire to mend their relationship. At the hearings, Scott vacillated between arguing that the court should require the daughters to visit him and asking that the court terminate his child support based on their refusal to do so. On appeal, he argues only that the chancellor erred in modifying the visitation schedule – the chancellor ordered that visitation be allowed at any time it was requested by the children, but that they would not be compelled to go.

¶14. "When modifying a visitation order, it must be shown that the prior decree for reasonable visitation is not working and that a modification is in the best interest of the child[ren]." *Ellis v. Ellis*, 840 So. 2d 806, 812 (¶25) (Miss. Ct. App. 2003).

¶15. There can be no doubt that the prior visitation schedule was not working. The

testimony was that visitation had not occurred as scheduled for years, and that during that time Scott had limited contact with the girls. He had essentially given up on visitation for many months at a time, and he never acted to enforce the visitation order until after Tammi sued him for contempt.

¶16.   Furthermore, although the chancellor only used the magic words "best interest of the children" once, it is clear he considered it at length. The chancellor spoke about the relationship between Scott and the children, the problems they had had, and what he believed was a path to reconciliation. The chancellor found that the girls had a sincere desire to reconnect with their father, but because they were nearing adulthood (and the oldest was already attending college away from home) it would be counterproductive to try to force them along faster than they were comfortable doing on their own. The chancellor thus allowed Scott unlimited communication and visitation, with the only condition being that the children agreed to it. "[W]e are mindful that a court is not bound by the wishes of a child as to visitation rights with a parent," but given the facts of this case, we can find no abuse of discretion in the chancellor's finding that this visitation arrangement was in their best interest. *See Ross v. Segrest*, 421 So. 2d 1234, 1236 (Miss. 1982).

¶17.   **THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, JAMES AND WILSON, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.**