# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01558-COA

**AMY LYNETTE BOLEN BUTLER**                                        **APPELLANT**

**v.**

**STEPHEN BRADLEY BUTLER**                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/05/2015 |
| TRIAL JUDGE: | HON. C. MICHAEL MALSKI |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CARRIE A. JOURDAN |
| ATTORNEY FOR APPELLEE: | CANDACE COOPER BLALOCK |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED MOTION TO MODIFY VISITATION AND DENIED MOTION TO MODIFY CUSTODY |
| DISPOSITION: | AFFIRMED - 05/02/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this appeal, we must determine whether the chancellor erred in (1) modifying the child-visitation order and (2) declining to modify the child-custody arrangement.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Stephen Bradley Butler and Amy Lynette Bolen Butler were married in 2006. The couple had one daughter, A.B.,[1] born in 2008.  On July 28, 2010, the chancery court entered a final judgment of divorce between Stephen and Amy on the ground of irreconcilable

_____

[1] We have used initials to protect the privacy of the child.

differences. The judgment provided that Stephen and Amy would share joint legal custody of A.B., and that Amy would have full physical care, custody, and control of A.B. The judgment incorporated a detailed visitation schedule for Stephen, which specified times, dates, holidays, and birthdays that Stephen would spend with A.B. The schedule allowed Stephen supervised visitation, which would eventually progress to unsupervised visitation.

¶3. At the time the divorce decree was entered, Stephen had a pending DUI charge. As a result, the visitation schedule placed certain restrictions on Stephen's ability to drive A.B. and have overnight visits at his home. These restrictions were set to expire on specified dates. The pending DUI charge was later dismissed on appeal. However, Stephen received a second DUI charge after the divorce. This second DUI triggered a provision in the visitation agreement that again restricted Stephen's ability to drive and have overnight visits with A.B. until further order of the court.

¶4. On December 15, 2014, Stephen filed a complaint for modification and petition for contempt against Amy, claiming that Amy willfully and contumaciously refused to comply with the visitation schedule. Stephen requested his visitation be set forth specifically and that Amy be prohibited from interfering with his relationship with A.B. Amy counterclaimed, seeking sole legal and physical custody of A.B. and modification of Stephen's visitation to supervised-only visits with A.B. Amy further petitioned the court to hold Stephen in contempt and to increase Stephen's child-support obligations.

¶5. On June 5, 2015, trial commenced in chancery court. At trial, Amy testified that Stephen failed to request 75 percent of his scheduled visitations. Stephen testified that his

2

lack of visitation was due, in part, to changes in his work schedule. Amy testified that she worried about Stephen's ability to care for A.B. in light of her medical condition. She testified that A.B. suffered from asthma and severe allergies, which required her to have an EpiPen and inhaler at all times. However, Amy admitted A.B. was still able to participate in a number of outdoor sports, including basketball and soccer, and never had to use the EpiPen. Specifically, Amy testified that she was concerned about Stephen's drinking, smoking, and mental illnesses—depression and bipolar disorder.

¶6. Stephen testified that Amy interfered with his relationship with A.B. by attending his scheduled visits and by blocking his phone number from A.B.'s cell phone. He testified that when A.B. would visit with him, Amy would text A.B. in the middle of the visit with messages such as, "Yay . . .[,] only [two] more hours to go." About a year prior to the hearing, Stephen testified that he noticed A.B.'s behavior toward him changing. While A.B. used to be happy to see him, she was now cold and indifferent. Concerning his alcohol use, Stephen testified that he successfully completed two rehabilitation programs—seven weeks' inpatient and twelve weeks' outpatient—and had been sober for two years. He then testified that approximately two or three times a month, he would drink a twenty-four-ounce can of beer. Stephen testified, however, that he had never consumed alcohol or smoked cigarettes around A.B. In response to Amy's concerns about his alleged mental illnesses, Stephen testified that he was never diagnosed as bipolar, though he had taken antidepressants in the past and was currently taking an anxiety medication. His depression and anxiety were diagnosed before his marriage to Amy.

¶7. At the conclusion of the trial, the chancellor rendered an opinion from the bench. With regard to visitation, the chancellor awarded Stephen the same rights he was given in the divorce decree. Accordingly, the chancellor removed all supervision requirements, allowing Stephen to drive A.B. and have overnight visits with A.B. at his home.[2] The provision restricting driving and overnight visits if Stephen received another DUI remained in effect. Additionally, the chancellor denied Amy's motion seeking sole legal and physical custody of A.B. Amy now appeals.

## STANDARD OF REVIEW

¶8. In child-custody-modification cases, we will uphold the decision of the chancellor unless he was manifestly wrong or clearly erroneous, abused his discretion, or applied an erroneous legal standard. *Dupree v. Pafford*, 200 So. 3d 1092, 1094 (¶4) (Miss. Ct. App. 2016) (citing *Pearson v. Pearson*, 121 So. 3d 266, 268 (¶6) (Miss. Ct. App. 2013)). The chancellor's findings of fact will not be set aside on appeal if they are supported by substantial credible evidence. *Carter v. Carter*, 204 So. 3d 747, 756 (¶37) (Miss. 2016) (citing *Marascalco v. Marascalco*, 445 So. 2d 1380, 1382 (Miss. 1984)). We review issues of law de novo. *Branch v. Branch*, 174 So. 3d 932, 938 (¶9) (Miss. Ct. App. 2015) (citing *Price v. Price*, 22 So. 3d 331, 332 (¶8) (Miss. Ct. App. 2009)).

¶9. Regarding visitation, the chancery court enjoys a large amount of discretion in making its determination of what is in the best interest of the child. *Adams v. Rice*, 196 So. 3d 1086,

---

[2] Stephen's father, Dexter Butler, testified at trial that Stephen's home was not clean. As a result, the chancellor required all of Stephen's overnight visits to occur at Butler's home until Butler found Stephen's home suitable for A.B.

4

1089 (¶9) (Miss Ct. App. 2016) (citing *Ellis v. Ellis*, 840 So. 2d 806, 812 (¶24) (Miss. Ct. App. 2003)). The chancellor has the responsibility to evaluate the credibility of witnesses and evidence, and on review, "[w]e will not arbitrarily substitute our judgment for that of the chancellor[,] who is in the best position to evaluate all factors relating to the best interest of the child." *Brooks v. Brooks*, 76 So. 3d 215, 217 (¶5) (Miss. Ct. App. 2011) (citing *Mosley v. Mosley*, 784 So. 2d 901, 905-06 (¶15) (Miss. 2001)).

## DISCUSSION

### I.    Custody

¶10.    Amy argues that the chancellor erred by denying her motion to modify the custody agreement to award her sole legal and physical custody of A.B. Specifically, she asserts both parties had stipulated that a material change of circumstances had occurred, and thus the chancellor erred when he found otherwise.

¶11.    To obtain a change in custody, the moving party must prove by a preponderance of the evidence that (1) a material change of circumstances has occurred in the custodial home since the most recent custody decree, (2) the change adversely affects the child, and (3) the child's best interests mandate a change in custody. *Moreland v. Spears*, 187 So. 3d 661, 663 (¶5) (Miss. Ct. App. 2016) (citing *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003)). To determine whether a material change in circumstances has occurred, the court must consider the "totality of the circumstances." *Id.* at 664 (¶6) (citing *Mabus*, 847 So. 2d at 818 (¶8)). Even where the chancellor finds a material change in circumstances has occurred, the chancellor must still additionally determine that the change has adversely affected the child

5

and that a modification of custody is in that child's best interest. *Curry v. McDaniel*, 37 So. 3d 1225, 1229 (¶8) (Miss. Ct. App. 2010) (citing *Tucker v. Tucker*, 453 So. 2d 1294, 1297 (Miss. 1984)). "[T]he best interest and welfare of the child are the [principal] considerations." *Id.* "It is only that behavior of a parent which clearly posits or causes danger to the mental and emotional well-being of a child (whether such behavior is immoral or not), which is [a] sufficient basis to seriously consider the drastic legal action of changing custody." *Campbell v. Watts*, 192 So. 3d 317, 322 (¶19) (Miss. Ct. App. 2015) (quoting *Ballard v. Ballard*, 434 So. 2d 1357, 1360 (Miss. 1983)).

¶12.   During trial, the chancellor found that no material change in circumstances had occurred to justify modification of the custody arrangement. Amy argues that her inability to cooperate with Stephen constituted a material change in circumstances. This Court has never held that the mere inability of divorced parents to cooperate with one another constitutes a material change in circumstances. In *Lipsey v. Lipsey*, 755 So. 2d 564, 566 (¶7) (Miss. Ct. App. 2000), this Court reversed a trial court's decision to modify custody when that decision was based on nothing more than the parties' inability to cooperate with one another. "In light of the . . . cases where much more severe acts were found not to constitute material changes in circumstances, we would be remiss to say that the law warranted a change in custody here." *Id.* "This Court does not find lack of cooperation to be a pinnacle that warrants a reconsideration of custody[.]" *Id.* at 567 (¶9). This issue is without merit.

## II.   Visitation

¶13.   Amy argues that the chancellor erred by awarding Stephen unsupervised visitation

6

with A.B. To modify a visitation order, "it must be shown that the prior decree for reasonable visitation is not working and that a modification is in the best interest of the [child]." *Culberson v. Culberson*, 196 So. 3d 1062, 1066 (¶14) (Miss. Ct. App. 2016) (quoting *Ellis*, 840 So. 2d at 812 (¶25)).

¶14. There was substantial credible evidence that the visitation schedule was not working. At trial, both Stephen and Amy acknowledged that there had been numerous problems with visitation. Stephen's work schedule changed immediately following the entry of the divorce decree, which interfered with his ability to visit with A.B. on the weekends. Additionally, Stephen's second DUI occurred shortly after the divorce decree, and consequently restricted his ability to pick up A.B. and have overnight visits with her. According to Amy, Stephen failed to request 75 percent of his scheduled visitations. Amy admitted that she did not feel comfortable leaving A.B. with Stephen and that she prevented A.B. from spending Christmas with him. Stephen was not able to see A.B. until the following March.

¶15. As this Court has previously explained:

> With visitation, as in all matters relating to a minor child, the primary consideration is the best interest of the child. We start from the presumption that where possible, that best interest is served by maintaining a viable relationship with both parents. Therefore, the goal in establishing visitation is to encourage and forge as strong of a bond as possible between the child and the non-custodial parent and between the child and the custodial parent under the least disruptive circumstances.

*Strange v. Strange*, 43 So. 3d 1169, 1173 (¶14) (Miss. Ct. App. 2010). Here, as discussed, Stephen's visitation rights were restricted due to his second DUI. The record demonstrates that the modification simply reinstated Stephen's original visitation rights—the rights he

7

would have enjoyed had he not received a second DUI. The provision triggered by Stephen's second DUI also stated that the restrictions would remain in effect until further order of the court. The modification here is just that: further order of the court. The chancellor considered that Stephen had successfully completed rehab and had not received a DUI in over four years, and that A.B.'s medical condition had improved. These findings were supported by the substantial credible evidence. Because the prior visitation schedule was not working, and given the presumption that a child's best interest is served by the maintenance of a relationship with both parents, the chancellor did not err in modifying the visitation schedule.

¶16. **THE JUDGMENT OF THE MONROE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**