## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00673-COA

**RANDI LYNN BUTLER**                                                      **APPELLANT**

**v.**

**JOSEPH PARKER MOZINGO**                                              **APPELLEE**

DATE OF JUDGMENT:             04/05/2018
TRIAL JUDGE:                  HON. SUSAN RHEA SHELDON
COURT FROM WHICH APPEALED:    FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       PHILLIP LLOYD LONDEREE
ATTORNEYS FOR APPELLEE:       SHEILA HAVARD SMALLWOOD
                              JOHN D. SMALLWOOD
NATURE OF THE CASE:           CIVIL - CUSTODY
DISPOSITION:                  REVERSED AND RENDERED - 11/12/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**C. WILSON, J., FOR THE COURT:**

¶1.     This is a child-custody-modification case. Randi Butler and Joseph Mozingo are the parents of R.M., a minor.[1] Butler appeals from the Forrest County Chancery Court's judgment granting Mozingo's request for custody modification and for other relief. To obtain a change in custody, Mozingo had to prove by a preponderance of the evidence that "(1) a material change of circumstances . . . occurred in the custodial home since the most recent custody decree, (2) the change adversely affect[ed] the child, and (3) the child's best interests mandate[d] a change in custody." *Butler v. Butler*, 218 So. 3d 759, 762 (¶11) (Miss.

---

[1] We use initials to protect the privacy of the minor involved in this matter.

Ct. App. 2017). Upon review, the chancellor did not err in finding that a material change in circumstances occurred in R.M.'s custodial home. But the chancellor's de facto determination that the change adversely affected R.M. is not supported by substantial evidence in the record. We therefore reverse and render the chancery court's order modifying custody.

## FACTS AND PROCEDURAL HISTORY

¶2. Although never married, Butler and Mozingo engaged in an intimate relationship that resulted in the conception of R.M. Butler gave birth to R.M. in July 2014. On January 12, 2015, the chancery court entered an agreed order that adjudicated Mozingo as the natural father of R.M., granted the parties joint legal custody of R.M., granted physical custody and child support to Butler, and granted visitation to Mozingo.

¶3. About two years later, on March 24, 2017, Mozingo filed a complaint seeking modification of custody and for other relief. In his complaint, Mozingo alleged that there had been a substantial change in circumstances in Butler's home since January 2015 and that the change had an adverse impact on R.M. According to Mozingo, Butler had made "numerous moves in the past two . . . years due in part to her inability to maintain gainful employment." Mozingo also contended that Butler's "actions over the past two years show[ed] poor judgment as well as poor parenting skills with regard to the health and welfare of [R.M.]" Accordingly, Mozingo sought physical custody of R.M. and child support from Butler.

¶4. On April 25, 2017, the chancery court entered an agreed temporary order for the parties to exchange physical custody of R.M. on a weekly basis during June and July 2017.

On August 28, 2017, the chancery court entered a second agreed temporary order for the parties to share joint legal and physical custody of R.M. until further order of the court. On March 8, 2018, the chancery court held a trial on Mozingo's complaint. Butler, Mozingo, Mozingo's mother, Mozingo's girlfriend, and Butler's sister-in-law testified during the trial.

¶5.     Butler's testimony revealed five moves that entailed both different residences and living arrangements, the birth of a second child (whose father provides Butler no child support), a driver's license suspension for an unpaid traffic violation, and an arrest for a misdemeanor incident that occurred prior to R.M.'s birth—all within the three years since the chancery court entered the January 2015 agreed order. According to Butler's testimony, she first lived with her brother and his wife. She then moved into her own apartment. After that, she moved into a larger home with her mother. Next, she moved in with a friend and her friend's two children. And finally, Butler moved into a three-bedroom trailer, which she was leasing to own from her friend Mandy Odom. Butler testified that she had been living in the trailer for about a year and that Odom was also living in the trailer until Odom finished remodeling her house.

¶6.     Mozingo testified he should have physical custody of R.M. due to Butler's lack of stability. But he also stated that the week-on-week-off schedule had worked well for them and that he "personally [did] not have a problem with the week on, week off." According to Mozingo, R.M. has been in good health, and Butler has done nothing to cause him to believe that she was being negligent or not taking care of R.M.

¶7.     Mozingo's mother likewise testified that the week-on-week-off schedule had worked

3

well and that R.M. was in good health, "active[,] and bright." Mozingo's girlfriend testified that Mozingo wanted physical custody of R.M. to provide him with stability. Mozingo's girlfriend agreed that Mozingo seemed to be enjoying the week-on-week-off schedule and that the schedule was "good." Butler's sister-in-law testified that Butler is a very good mother and that the week-on-week-off schedule had been working "okay."

¶8. At the end of the trial, the chancellor made an on-the-record finding that

> there has been a material change in circumstances that has been adverse to the minor child, namely, [R.M.], and that material change in circumstances has to do with the five different residence[s] and the lack of stability in [Butler's] household, that [Butler has] moved five times since [R.M.] was born. And he's only three-and-a-half years old.

The chancellor went on to address the *Albright*[2] factors and ultimately awarded physical custody to Mozingo. On April 2, 2018, the chancery court entered a judgment modifying custody. Similar to the chancellor's bench finding, the judgment stated that

> [Butler]'s testimony reflected that she and the minor child had made several moves since the [agreed order] was entered in January of 2015 . . . . Based on these moves, the Court finds that a material change in circumstances has occurred in the home of . . . Butler which has had an adverse effect on the minor child of the parties.

Aggrieved, Butler appealed.

¶9. On appeal, Butler contends that the chancellor erred in finding a material change in the custodial home. According to Butler, Mozingo likewise did not establish an adverse effect on R.M. at trial. Butler contends that, in fact, the undisputed evidence offered at trial demonstrated that the parties' custody and visitation schedule was working well and had no

---

[2] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

ill effects on R.M.

## STANDARD OF REVIEW

¶10. "The standard of review in child custody cases is limited. Reversal occurs only if a chancellor is manifestly wrong or applied an erroneous legal standard." *Floyd v. Floyd*, 949 So. 2d 26, 28 (¶5) (Miss. 2007). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." *Hammers v. Hammers*, 890 So. 2d 944, 950 (¶14) (Miss. Ct. App. 2004) (quoting *Bower v. Bower*, 758 So. 2d 405, 412 (¶33) (Miss. 2000)).

## DISCUSSION

¶11. "To obtain a change in custody, the moving party must prove by a preponderance of the evidence that (1) a material change of circumstances has occurred in the custodial home since the most recent custody decree, (2) the change adversely affects the child, and (3) the child's best interests mandate a change in custody." *Butler*, 218 So. 3d at 762 (¶11). In weighing a petition for modification, "chancellors are charged with considering the 'totality of the circumstances.'" *Giannaris v. Giannaris*, 960 So. 2d 462, 467 (¶10) (Miss. 2007) (quoting *Tucker v. Tucker*, 453 So. 2d 1294, 1297 (Miss. 1984)). "Before custody should be changed, the chancellor should find that the overall circumstances in which a child lives have materially changed and are likely to remain materially changed for the foreseeable future and, of course, that such change adversely impacts upon the child." *Id.* (emphasis omitted).

¶12. Viewing the record as a whole, substantial evidence supports the chancellor's finding

that a material change of circumstances occurred in R.M.'s custodial home. As noted by the chancellor, Butler has moved five times since R.M.'s birth. Generally, "the mere moving of the custodial parent does not constitute a material change in circumstances for child custody modification purposes." *Welton v. Westmoreland*, 180 So. 3d 738, 749 (¶34) (Miss. Ct. App. 2015) (quoting *Giannaris*, 960 So. 2d at 468 (¶11)). But "it is the effect the move has on the child and the custody arrangement that is dispositive." *Id*. (quoting *Pearson v. Pearson*, 11 So. 3d 178, 182 (¶10) (Miss. Ct. App. 2009)). This Court has previously upheld a chancellor's finding of material change where multiple moves are coupled with other evidence indicating a lack of stability. *Id*. at (¶35) (referencing the "considerable discretion" we afford chancellors).

¶13. In this case, Butler's five moves each entailed not only different residences but also materially different living arrangements. The chancellor determined "the five different residences *and* the lack of stability in [Butler's] household" constituted a material change in circumstances. (Emphasis added). Reviewing the record, additional evidence of a "lack of stability in [Butler's] household" was adduced at trial. For example, the chancellor noted that Butler "does not have the financial resources to pay the financial obligations that were listed on her financial statement." And, since R.M.'s birth, Butler has had a second child for whom she bears sole financial responsibility because the child's father pays no child support. Mindful of our limited standard of review, we conclude that the chancellor's finding of a material change in R.M.'s custodial home is supported by substantial evidence and therefore is not manifestly wrong.

¶14.    Still, even when the record supports a finding that a material change in circumstances in the custodial home has occurred, the chancellor "must separately and affirmatively determine that this change is one which adversely affects the child[]." *Bredemeier v. Jackson*, 689 So. 2d 770, 775 (Miss. 1997). The change in circumstances must "clearly posit[] or cause[] danger to the mental or emotional well-being of [the] child . . . ." *Giannaris*, 960 So. 2d at 468 (¶10) (quoting *Ballard v. Ballard*, 434 So. 2d 1357, 1360 (Miss. 1983)). Each of these findings—a material change *and* adverse effect on the child—is a condition precedent to reaching and re-weighing the *Albright* factors. *Id.* ("The *Albright* factors may ebb and flow yearly, quarterly, monthly or even less, but in the absence of a substantial adverse effect upon the child, physical custody changes are not only unwarranted, they are unwise.").

¶15.    As Butler points out on appeal, the record reveals no "separate and affirmative determination," supported by substantial evidence, of any adverse effect on R.M. In fact, the evidence adduced at trial runs counter to such a determination: Butler, Mozingo, and Mozingo's mother all agreed that R.M. was in "good health," "active," and "bright." Moreover, Mozingo "personally [did] not have a problem with the week on, week off" custody arrangement in place at the time of trial; Mozingo's girlfriend agreed that the schedule was "good"; and Butler's sister-in-law testified that the schedule had been working "okay." There was no proof that Butler was a negligent mother or failed to care for R.M.

¶16.    In the face of this evidence, the chancery court's finding that "the lack of stability in [Butler's] household, that [Butler has] moved five times since [R.M.] was born," while

7

sufficient to substantiate a material change in the custodial home, does not in itself support a finding of adverse effect on R.M. Absent an "affirmative determination" of adverse effect, the chancery court's re-application of the *Albright* factors was at best premature, and the chancery court's modification of custody was manifestly in error.

¶17. Nor is this the "occasional" or "rare" case, as Mozingo urges on appeal, that would warrant a change in custody "even without a specific finding that such environment has adversely affected the child's welfare." *Riley v. Doerner*, 677 So. 2d 740, 744-45 (Miss. 1996) (affirming modification of custody where custodial home was site of dangerous and illegal behavior, including drug use). In *Riley*, our supreme court made clear that the test for custody modification "need not be applied so rigidly, nor in such a formalistic manner so as to preclude the chancellor from rendering a decision appropriate to the facts of an individual case." *Id.* But the *Riley* court also made clear that "in most cases, a straightforward application of the test for custody modification—that is, starting with the requirement of a showing of a material change in circumstances, adversely affecting the child's welfare—will result in a decision consistent with the best interests of the child." *Id.* at 745. This case, on the record before us, falls within that general rule. We accordingly reverse and render the chancery court's judgment modifying custody.

## CONCLUSION

¶18. Although the chancery court's finding of a material change in R.M.'s custodial home is supported by substantial evidence, the court's "finding" of a resulting adverse effect on R.M. is not. Accordingly, the modification of custody was manifestly in error. The

8

judgment of the chancery court is therefore reversed and rendered.

¶19. **REVERSED AND RENDERED.**

**BARNES, C.J., AND CARLTON, P.J., CONCUR. J. WILSON, P.J., AND TINDELL, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY LAWRENCE, J. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.; TINDELL, J., JOINS IN PART.**

**GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶20. I concur with the majority that there is substantial evidence supporting the chancellor's finding that a material change of circumstances occurred in R.M.'s custodial home. However, I believe this case should be reversed and remanded to allow the chancellor to make a determination as to whether the material change adversely affected R.M.'s welfare.

¶21. "Due to the chancellor's actual presence in the courtroom, [she] is best equipped to listen to the witnesses, observe their demeanor, and determine their credibility." *Wikel v. Miller*, 53 So. 3d 29, 34 (¶12) (Miss. Ct. App. 2010) (citing *Minter v. Minter*, 29 So. 3d 840, 850 (¶36) (Miss. Ct. App. 2009)). Since the chancellor is in the best position to hear and rule, it is not this Court's province to "substitute our judgment for the chancellor's, 'even if we disagree with the findings of fact and would arrive at a different conclusion.'" *James v. James*, 135 So. 3d 188, 191 (¶10) (Miss. Ct. App. 2013) (citing *Wilson v. Wilson*, 79 So. 3d 551, 560 (¶37) (Miss. Ct. App. 2012)). Therefore, I would reverse and remand this case for further proceedings.

**LAWRENCE, J., JOINS THIS OPINION.**

9

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶22.    I agree with the majority's implied finding that there was no evidence showing any adverse effect and would also reverse and render the chancellor's modification of R.M.'s custody, but reviewing applicable precedent, Butler's relocations did not constitute a material change.  Therefore, I concur in part and respectfully dissent in part.

¶23.    "In cases involving child-custody modification, this Court will not disturb the findings of the chancellor unless the chancellor was manifestly wrong, was clearly erroneous, or applied an erroneous legal standard." *Bryant v. Bryant*, 105 So. 3d 1146, 1149 (¶13) (Miss. Ct. App. 2012) (citing *White v. White*, 26 So. 3d 342, 346 (¶10) (Miss. 2010). "[W]e will not reverse where the chancellor's findings are supported by substantial credible evidence." *Jones v. Jones*, 878 So. 2d 1061, 1064 (¶4) (Miss. Ct. App. 2004).

¶24.    In direct contradiction with the chancellor's finding, Mississippi's appellate courts have "repeatedly held that the mere moving of the custodial parent does not constitute a material change in circumstances for child custody modification purposes." *Giannaris v. Giannaris*, 960 So. 2d 462, 468 (¶11) (Miss. 2007); *see also Powell v. Powell*, 976 So. 2d 358, 362 (¶16) (Miss. Ct. App. 2008) (holding that "relocation of the custodial parent does not *alone* constitute a material change in circumstances" (emphasis added)); *Cooley v. Cooley*, 574 So. 2d 694, 695-96, 699 (Miss. 1991) (finding that although the mother and children resided in five different cities over a four- year period and had crossed multiple state and international borders, there was not sufficient evidence to support the chancellor's finding that a material change had occurred), *overruled on other grounds by Powell v.*

*Powell*, 644 So. 2d 269, 274 (Miss. 1994).

¶25.    In the case before us, the chancellor's order, in pertinent part, stated that

> Randi's testimony reflected that she and the minor child made several moves
> since the Agreed Order was entered in January of 2015, including the
> following: [1] with her brother, Justin Butler . . . ; [2] an apartment [on her
> own]; [3] a home with her mother . . . ; [4] with a roommate and her children
> . . . ; and currently at [5] with Mandy Odom . . . .  Based on these moves, the
> [c]ourt finds that a material change in circumstances has occurred in the home
> of Randi Butler which has had an adverse effect on the minor child of the
> parties.

The majority attempts to insert further considerations into the chancellor's reasoning
regarding Butler's moves, but her relocations served as the only basis of support for the
chancellor's findings in the record.

¶26.    The majority opinion cites *Welton*, 180 So. 3d at 749 (¶34), where this Court held that
"the mere moving of the custodial parent does not constitute a material change in
circumstances for child custody modification purposes" but upheld the chancellor's custody
modification because the moves were coalesced with other evidence. *Id.* at (¶35).  Unlike
the court here, the chancellor in *Welton* considered "more than just Sabrina [Welton's]
relocation in his ruling." *Id*.  Hardly comparable to the facts involved in this case, Welton
exhibited numerous and blatant signs of instability. *Id.*  At the time of the trial, Welton was
residing with her then fiancé, Darren (whom she met on the Internet). *Id.*  On at least one
occasion, Darren had kicked Welton and her children out of the home following an argument.
*Id.*  For a time, both she and her children were rendered homeless by Darren's actions. *Id.*
Welton's children testified that the moves, living arrangements, and arguing between their
mother and her partner had been both stressful and frightening. *Id.*  Perhaps the most notable

11

distinction from the case at bar is that the mother in *Welton* made various moves because she was unable "to provide any stable living arrangements for the minor children" due to "erratic" employment and ultimately ended up in a home "in which she had no legal right to stay." *Id.* at 748-49 (¶¶33, 35).

¶27. "Whether a material change has occurred depends on the totality of the circumstances. Events (i.e., moving), which would not, alone, be a sufficient material change, may in combination provide a basis for modifying custody." Deborah H. Bell, *Bell on Mississippi Family Law* § 12.11[5][a], 396 (2d ed. 2011) (citing *Duke v. Elmore*, 956 So. 2d 244, 251 (¶19) (Miss. Ct. App. 2006); *Hill v. Hill*, 942 So. 2d 207, 211 (¶16) (Miss. Ct. App. 2006)). To meet the threshold, "[t]he material change must present a genuine danger to the child" and "[c]onduct that would weigh against a parent in an original custody decision does not necessarily justify custody modification." *Id.* (citing *Lorenz v. Strait*, 987 So. 2d 427, 430-34 (¶¶14-38) (Miss. 2008) (finding that a father's drinking and DUI did not evince a material change despite the mother's testimony that the father drank heavily because no harm or danger to the child was shown, and the father was in substance-abuse counseling)).

¶28. Here, there is no other evidence to show a material change occurred. *Cf. Welton*, 180 So. 3d at 749 (¶34). In support of the chancellor's finding, the majority references inconsistencies in Butler's Rule 8.05 financial statement as evidence of inadequate financial resources. When questioned about the statement, Butler readily testified about omitted cash savings and the variances in her monthly income and expenditures.[3] No attempts were made

---

[3] Butler testified that she worked part time for a cleaning service and was paid in cash.

to conceal the assets at trial and it was evident during Butler's testimony that she made some mistakes in her attempt to complete the form.[4] Miscalculations on Butler's Rule 8.05 disclosure would hardly render her moves a material change and were not noted as support for the chancellor's findings or in any relevant precedent; similar inconsistencies were also noted in Mozingo's Rule 8.05 disclosure.

¶29. The majority points to the birth of Butler's second child as an attendant circumstance to render the moves a material change, citing Butler's decision to act as the sole provider for an additional child as indication of a "lack of stability." This assertion is not recited in the chancellor's order. It is also unsupported by any legal authority and contradicts the testimony presented in the majority opinion's summary of the facts. Mozingo, Mozingo's mother, and Mozingo's girlfriend testified that R.M. was in "good health," and that Butler "had done nothing to cause [Mozingo] to believe that she was being negligent or not taking care of R.M." No one, including the chancellor, cited Butler's second child as an indication that she was unstable or experiencing notable difficulty providing and caring for either of her children.

¶30. Butler's decision to conceive, keep, and care for a second child is just that—her decision. While the choice may not align with the personal and/or religious convictions of some people, the law does not render it necessarily wrong or provide for it to serve as a basis to establish a material change with regard to custody modification. The fact that the father

---

[4] During Butler's testimony, trial counsel clarified a mistake in Butler's Rule 8.05 disclosure. Intending to report an annual income of $10,500, Butler misstated the amount as monthly income.

of Butler's second child does not financially support Butler could just as easily be construed as evidence of her maturity given the allegations surrounding his fitness as a parent. Nevertheless, by all indications, Butler put both her children first and worked to maintain a safe and loving environment.

¶31. Obviously distinguishable from *Welton*, Butler's moves, *all of her own accord*, never left her family destitute. Instead, Butler's transitions seemingly signified attempts toward greater independence and stability for her and her children. Initially, Butler lived with her brother, his wife, and their children. After the birth of R.M., Butler moved into a modest apartment to establish a residence of her own. The record indicates Butler converted to a larger accommodation, which was owned by the same landlord, when her mother moved in with her and R.M. Following her mother's departure, Butler determined it was more economical to share a home with her friend, who was also a mother of two small children. Butler and her children remained there until moving into their current residence, which happens to be owned by Mandy Odom. At trial, Butler submitted a receipt for the $4,000 down payment she paid toward the purchase of the home; Butler entered a rent-to-own agreement to purchase the property from Odom. The purchase evinces a permanent residence for Butler and her children for the foreseeable future and remedies any potential material change that might have arisen from the relocations.

¶32. In contrast, upon his return from school, Mozingo moved into a residence on his family's property. Like Welton, Mozingo admittedly has no legal ownership interest in the property and lives there by the grace of his parents. Even without the benefit or assistance

14

of reliable parents, Butler maintained stable employment and worked quickly and actively to move her family forward.

¶33.    To affirm the chancellor's finding of a material change based *solely* on Butler's relocations would reconstrue Mississippi law.  Absent additional factors, the moves simply do not constitute a material change.  "We close our eyes to the real world if we ignore that ours is a mobile society.  Opportunity and economic necessity transport perfectly responsible adults . . . from their homes" to more suitable and desirable accommodations.  *Spain v. Holland*, 483 So. 2d 318, 321 (Miss. 1986).  The majority's finding would penalize Butler for attaining growth and advancement and thereby be counterproductive to the law and its purpose.

¶34.    Accordingly, I would find that Butler's relocations did not constitute a material change; thus, the chancellor did not satisfy even the first prong of the applicable custody modification analysis.  Neither the chancellor's order nor the record provide any additional basis to support the finding, which was clearly erroneous and manifestly wrong.  For these reasons, I concur in part and respectfully dissent in part.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.  TINDELL, J., JOINS THIS OPINION IN PART.**

15