# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00277-COA

| | |
|---|---|
| KEMPER EHRHARDT AND ROBERT EHRHARDT | APPELLANTS |

v.

| | |
|---|---|
| HELEN DONELSON AND GARY T. HUFFMAN, AS CO-EXECUTORS OF THE ESTATE OF JULIA DONELSON EHRHARDT, DECEASED | APPELLEES |

| | |
|---|---|
| DATE OF JUDGMENT: | 12/07/2015 |
| TRIAL JUDGE: | HON. WILLIAM R. BARNETT |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | STEVEN CRAIG PANTER |
| ATTORNEY FOR APPELLEES: | KENNETH B. RECTOR |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | FOUND APPELLANTS WERE NOT ENTITLED TO AN INTEREST IN THE MARITAL HOME OWNED BY THEIR STEPMOTHER |
| DISPOSITION: | AFFIRMED - 06/20/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. This is an appeal from the Chancery Court of Warren County. Robert Ehrhardt ("Robert") and Kemper Ehrhardt ("Kemper") contend that upon the death of Julia Donelson Ehrhardt ("Julia"), their stepmother, they became entitled to fifty percent of the proceeds from the sale of the house previously owned by her and the late Robert Ehrhardt Sr. ("Robert Sr."). The chancery court found the property passed by virtue of deed to Julia after Robert Sr.'s death. Finding no error, we affirm the chancery court's judgment.

# FACTS AND PROCEDURAL HISTORY

¶2.     Kemper and Robert ("Ehrhardt brothers") are the sons of Robert Sr. (deceased) and his first wife. After the death of Robert Sr.'s first wife, he married Julia.

¶3.     On September 2, 1988, Robert Sr. and Julia purchased a home as joint tenants with full rights of survivorship, and not as tenants in common. Subsequently, Julia purchased, in her name alone, a strip of land adjoined to the marital home.

¶4.     On April 27, 2000, Robert Sr. executed his last will and testament. The provision relevant to this appeal provides:

> My interest in the marital home (land and improvements) is hereby given, devised and bequeathed to my wife, Julia Donelson Ehrhardt, in trust and as Trustee for her benefit upon the following terms and conditions:
>
> . . . .
>
> **Paragraph VI, C**: At the death of my wife, the trust shall terminate and then the house or subsequent dwelling which the trust has an interest shall be sold and my fifty (50%) percent of net proceeds from the sale of that house or dwelling shall be delivered to my residuary beneficiaries equally and per stirpes.

¶5.     Robert Sr. died testate on September 4, 2007. On February 26, 2009, the Ehrhardt brothers filed in Robert Sr.'s estate proceeding a sworn Petition for Waiver of Final Accounting, For Approval of the Payment of Fees and Expenses, for Approval of Distribution of Assets, and for Discharge of Executor. In the petition, the Ehrhardt brothers made the following representation to the chancery court under oath:

> Paragraph VI of the Decedent's Last Will and Testament bequeathed his interest in the marital home to Julia Ehrhardt, for her lifetime, and at her death,

2

> Decedent's fifty percent (50%) interest in the marital home was to pass to his two sons. However, title to the marital home was vested in the Decedent and Julia Donelson Ehrhardt as joint tenants with full rights of survivorship and not as tenants in common therefore making this provision inapplicable.

Also, Julia filed a waiver of service, and the chancellor entered an order specifically including a finding and adjudication that the provisions of section VI of Robert Sr.'s last will and testament were inapplicable.

¶6.     On February 27, 2009, the chancery court issued an order finding that title of the marital home was vested in Robert Sr. and Julia as joint tenants with full rights of survivorship and not as tenants in common. Therefore, paragraph VI of Robert Sr.'s last will and testament was deemed inapplicable.

¶7.     Julia executed a new last will and testament on July 22, 2008. She died January 13, 2015. Her will was admitted into probate on January 16, 2015. Julia named Helen Donelson and Garry T. Huffman as coexecutors. Pursuant to an order by the chancery court, the coexecutors were authorized to sell the marital home of Robert Sr. and Julia. The home sold for $243,277.00, and the proceeds were delivered, in trust, to the attorneys for the coexecutors. In July 2015, the Ehrhardt brothers filed a claim in Julia's estate alleging they were entitled to fifty percent of the proceeds of the sale of the marital home, pursuant to paragraph VI of Robert Sr.'s will. The coexecutors contested the Ehrhardt brothers' claim. They argued that the Ehrhardt brothers did not file any claim of an interest in the marital home until after the sale of the home was completed. They also argued an issue of waiver, because of the representation the Ehrhardt brothers made to the chancery court regarding

3

Robert Sr.'s will. Therefore, any claim toward the proceeds of the sale of the marital

home was barred.

¶8.     After a hearing, the chancellor disallowed the claim by the Ehrhardt brothers, finding

that the marital home passed to Julia at the time of Robert Sr.'s death by virtue of deed. The

Ehrhardt brothers appeal.

## STANDARD OF REVIEW

¶9.     "In appeals from the chancery court, this Court applies a limited standard of review."

*Byrd v. Abney*, 99 So. 3d 1180, 1183 (¶11) (Miss. Ct. App. 2012) (citation omitted). "This

Court will not overturn a chancellor's findings of fact when supported by substantial

evidence unless an erroneous legal standard was applied or the chancellor was manifestly

wrong." *Id*. "The standard of review employed by this Court for review of a chancellor's

decision is abuse of discretion." *Id*. "For questions of law, the standard of review is de

novo." *Id*.

## DISCUSSION

**I.      Whether the chancellor erred in ruling that Robert Sr.'s interest
          passed to Julia upon his death.**

¶10.    The chancellor found the property in question passed to Julia at the time of Robert

Sr.'s death by virtue of deed. We agree. We find the facts in this case somewhat analogous

to the facts in *Huff v. Metz*, 676 So. 2d 264 (Miss. 1996).

¶11.    Vera Huff conveyed a parcel of land by warranty deed to herself and her grandmother,

Carole Metz, as joint tenants with full right of survivorship and not as tenants in common.

*Id.* at 264. Later, Huff executed a will, where she stated her intention was to leave only one-half of the property to Metz and the other half of the property to her son. *Id*.

¶12.    The Mississippi Supreme Court ruled that Huff had no legal power to unilaterally revoke the survivorship provision of the joint tenancy in her will, and that full ownership of the property covered under the joint tenancy passed to Metz upon Huff's death by operation of the right of survivorship. *Id.* at 265.

¶13.    The Ehrhardt brothers contend that Julia and Robert Sr. terminated their joint tenancy the following ways: (1) a prepared will reflecting Robert Sr.'s intent to pass his one-half ownership to Julia in trust rather than fee simple, and (2) Julia did not object during the reading of Robert Sr.'s will. We disagree. Although the Ehrhardt brothers contend Julia did not object to the will's provision regarding the marital home, this Court finds no evidence to support that contention. There are no signed documents from Julia to support the Ehrhardt brothers' assertion that Julia agreed to sever the joint tenancy after his death. Also, the Supreme Court ruled in *Huff* that one cannot unilaterally sever a joint tenancy by will. *Id*. Therefore, Robert Sr.'s will, alone, could not sever the joint tenancy. Julia did not raise an objection; however, it is obvious she did not agree with the terms of the provision regarding the disposition of property. She executed a new will leaving the marital home and the proceeds from its sale to her own heirs. Additionally, the Ehrhardt brothers argue that upon Robert Sr.'s death, Julia became the trustee of Robert Sr.'s estate. We disagree. Julia neither took the responsibility of trustee, nor honored that provision in Robert Sr.'s will. This was

5

evidenced by her new will, which devised the proceeds of the sale of the marital home to her heirs. We agree with the chancellor's finding that any transfer of all or a portion of the property would have also required Julia's signature.

¶14. Also, the Ehrhardt brothers referenced judicial estoppel, equitable estoppel, unclean hands, res judicata, and waiver. This Court will not address these issues, because they are not relevant for adjudication of this appeal.

> **II. Whether the chancery court erred in excluding evidence that Robert Sr. and Julia entered into mutual wills.**

¶15. We review a trial judge's decision of whether to admit or exclude evidence under an abuse-of-discretion standard of review. *Martin v. Stevenson*, 139 So. 3d 740, 750 (¶32) (Miss. Ct. App. 2014) (citation omitted).

¶16. The Ehrhardt brothers contend the chancery court erred by not allowing the entire testimony of Robert Ellis, attorney of the late Robert Sr. We disagree with the Ehrhardt brothers' assignment of error. The Ehrhardt brothers sought to elicit testimony from Ellis as to whether Julia executed a mutual or reciprocal will. The coexecutors objected on the grounds of attorney-client privilege, and the chancellor sustained the objection.

¶17. Ellis did not prepare all the legal documents he tried to submit to the chancery court. He was unable to answer questions regarding the representation of Julia and her last will and testament. Moreover, the information he knew regarding Julia's representation was privileged and would require waiver of the privilege. The coexecutors were not present and did not waive the privilege on Julia's behalf. The Ehrhardt brothers rely on *Alvarez v.*

6

*Coleman*, 642 So. 2d 361 (Miss. 1994). In *Alvarez*, husband and wife Vernard and Dixie Droke owned 39.1 acres as "tenants by the entirety, with right of survivorship and not as tenants in common." *Id*. at 364. Vernard and Dixie executed nearly identical wills. *Id*. Each will, after nominal bequests of one dollar, devised the remainder of the testator's estate to "the [t]rustee of the revocable trust created of even date herewith." *Id*. William Alvarez was named executor in both wills. *Id*. Dixie died, and Vernard executed a new will leaving all property to his five nieces. Vernard also executed an instrument entitled "Revocation of Droke Family Trust," and stated that he was revoking the trust agreement. *Id*. The Supreme Court ruled that Vernard's original will became irrevocable upon the death of Dixie. *Id*. at 370.

¶18. This case is distinguishable from *Alvarez* in two ways. First, there is no solid evidence to show Julia and Robert Sr. executed mutual or reciprocal wills. The only evidence offered to suggest this assertion was handwritten notes alluding to the existence of these wills. No copy of a reciprocal will from Julia has ever been presented as evidence.

¶19. Second, in *Alvarez*, Vernard changed his will and executed an instrument revoking the trust created by him and Dixie. *Id.* at 364. In this case, Julia did not act as executor for a trust. Therefore, we find no error with the chancellor excluding part of Ellis's testimony.

¶20. **THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**